IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VINCENT LUCAS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOTAL SECURITY VISION, INC., a Florida corporation,<br><br>MOHAMMAD A. ULLAH, individually and in his capacity as officer of Total Security Vision, Inc.,<br><br>Defendants. | Case No. 1:16CV1102<br><br>**COMPLAINT**<br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED**<br><br>1. Violation of the Federal Telephone Consumer Protection Act ("TCPA")(47 U.S.C. § 227, 47 CFR § 64.1200)<br><br>2. Violation of the Ohio Telephone Solicitation Act (Ohio Rev. Code § 4719)<br><br>3. Violation of the Ohio Consumer Sales Practices Act (Ohio Rev. Code § 1345)<br><br>4. Invasion of privacy by unreasonable intrusion<br><br>5. Unjust enrichment |

JURISDICTION AND VENUE

1. This Court has jurisdiction over the claims herein pursuant to 47 U.S.C. § 227(b)(3), 47 U.S.C. § 227(c)(5), and Ohio Rev. Code § 2305.01. This venue is appropriate because all the telephone calls to Vincent Lucas described in the following paragraphs were received in Clermont County, Ohio.

1

## FACTS

2. In July 2002, Cincinnati Bell assigned the phone number (513) 947-1695 to my residential telephone line in Amelia, Ohio. That phone number has been assigned to my residential phone line ever since.

3. The phone number (513) 947-1695 is on the national Do Not Call registry (http://donotcall.gov) and has been since July 1, 2003.

4. The Defendants do not have an "established business relationship" with me as that term is defined in 47 U.S.C. § 227(a)(2) and 47 CFR § 64.1200(f)(4) and I have not given the Defendants express invitation or permission to call me.

5. At all relevant times, the outgoing message on my answering machine for my phone at (513) 947-1695 said

> This is Vincent Lucas. This number is on the national Do Not Call registry. If you have an established business relationship with me or you are calling about a non-business related matter, you may leave a message after the tone.

.

6. I received twelve telephone calls to my residential phone line (513) 947-1695 offering to lower my credit card interest rate. During each call, a message was left on my answering machine using an artificial or pre-recorded voice. The message does not state the identity of the caller or the phone number from which the call was made. The name of the caller was not transmitted to my caller ID device. According to the information displayed on my Caller ID device, the calls came on the following dates from the following telephone numbers: 515-207-3384 on 11/24/14 and 12/2/14; 205-409-0895 on 12/19/14, 12/23/14, 12/29/14; 786-540-0255 on

1/2/15, 1/6/15, 1/7/15, 1/16/15; 361-271-4868 on 1/14/15, 1/19/15, and 1/27/15. In each call, one of the following messages, or a slight variation thereof, was left on my answering machine:

> Message 1: This is your second and final notice to lower your credit card interest rate and payment. Press 1 now to find out the terms, conditions, and associated changes before the next billing cycle. Again, this is your final notice as it relates to the financial stimulus. So press 1 now to take advantage of this today.

> Message 2: ... account services and we're calling in reference to your current credit card account. There are no problems currently with your account. It is urgent however that you contact us concerning your eligibility for lowering your interest rate to as little as 1%. Your eligibility expires shortly so please consider this your final notice. Press the number 1 on your phone now to speak with a live operator or press the number 3 to discontinue further notices.

7. Total Security Vision, Inc. operated the telemarketing call center which processed these calls. If a call recipient pressed 1 on his/her phone to express an interest in the offer, the caller was transferred to a sales representative employed by Total Security Vision, Inc. Hence, each call was made on behalf of Total Security Vision, Inc.

8. Total Security Vision, Inc. was fully aware that these calls were made using an artificial or pre-recorded voice to a number on the national Do Not Call registry under circumstances in which such calls are illegal under federal law. Total Security Vision, Inc. willfully authorized the originator of these calls to violate federal telemarketing law by making unlawful calls using an artificial or pre-recorded voice to a number on the national Do Not Call registry.

9. Total Security Vision, Inc. was operating the aforementioned telemarketing call center on behalf of Premium Outsourced Solutions, as its agent.

3

10. The website for Premium Outsourced Solutions (http://premiumoutsource.com) on Dec. 18, 2014, and Feb. 21 and 24, 2015 provided the telephone number 1-877-371-4525 as the contact number for Premium Outsourced Solutions. To this date, that website provides 1-877-371-4525 as Premium Outsourced Solutions's customer service telephone number. For example, http://www.premiumoutsource.com/termsconditions.php says "If for any reason your package has not arrived after 10 business days, please contact us right away at 1-877-371-4525." http://www.premiumoutsource.com/refundpolicy.php says "If there is extensive damage to an item upon delivery, call a Customer Care Representative immediately at 1-877-371-4525."

11. Since 11/5/2012, the telephone number 1-877-371-4525 has been assigned to Total Security Vision, Inc.

12. Total Security Vision, Inc., as agent of Premium Outsourced Solutions, operated the customer service call center for Premium Outsourced Solutions. The telephone number for the customer service call center is 1-877-371-4525.

13. On information and belief, Total Security Vision, Inc. received pecuniary benefit from Premium Outsourced Solutions for operating its telemarketing and customer service call center.

14. Mohammad Ullah is the sole officer of Total Security Vision, Inc.

15. Mohammad Ullah formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Total Security Vision, Inc. set forth in this Complaint.

16. On information and belief, Mohammad Ullah personally approved or directed the actions of Total Security Vision, Inc. described in this Complaint.

17. The illegal telemarketing calls caused actual injury to me. Among other things, listening to the calls wasted my time. That time could have been used instead to earn money at my occupation.

## CAUSES OF ACTION

### VIOLATION OF THE FEDERAL TELEPHONE CONSUMER PROTECTION ACT ("TCPA"), OHIO TELEMARKETING ACT, AND OHIO TELEPHONE SOLICITATION ACT

18. The aforementioned calls violated the Federal Telephone Consumer Protection Act and Ohio Telephone Solicitation Act. Namely,

- the telephone calls were made to a residential line using an artificial voice (47 U.S.C. § 227(b)(1)(B));
- the calls were made to a number listed on the national Do Not Call registry (47 U.S.C. § 227(c));
- the calls did not state the identity and telephone number or address of the entity making the call (47 U.S.C. § 227(d)(3)(A), Ohio Rev. Code § 4719.06);
- the calls were made by an entity that is not registered as a telemarketer in Ohio (Ohio Rev. Code 4719.02); and
- the telemarketers knowingly caused the caller identification system to transmitted false information during some of the calls (47 U.S.C. § 227(e))

### VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT

19. Each call described in this Complaint is a "consumer transaction" under Ohio Rev. Code § 1345.01. Each call was a solicitation to supply a service to me for purposes that are primarily personal, family, or household.

5

20. Each aforementioned call was deceptive, unfair, and unconscionable and violated Ohio Rev. Code § 1345.02(A). Namely,

   a. The calls are designed to deceive the consumer into believing that the consumer already has a credit account with the telemarketer or company that the telemarketer is calling on behalf of.
   b. The pre-recorded message does not disclose the fact that the purpose of the call is to effect a new sale (in violation of Ohio Admin. Code § 109:4-3-11, 16 CFR § 310.4(d)(2)) and does not disclose the nature of the goods or services (violating 16 CFR § 310.4(d)(3)). The pre-recorded message instead leads the consumer to believe that the call is from an existing creditor, who might be offering to modify the terms of an existing line of credit.
   c. The telephone calls do not disclose the identity of the seller in violation of 16 CFR § 310.4(d)(1).
   d. The telephone calls were made using a pre-recorded voice in violation of 16 CFR § 310.4(b)(v).
   e. The telephone calls were placed to a number on the U.S. Do-Not-Call registry in violation of 16 CFR § 310.4(b)(iii)(B) and the Defendants did not honor my do-not-call request, expressed in my answering machine's outgoing message.
   f. The calls were made by an entity that is not registered as a telemarketer under Ohio Rev. Code 4719.02).

INVASION OF PRIVACY

21. The persistent, unwanted telephone calls made on behalf of the Defendants as described herein invaded my right to privacy by unreasonable intrusion into the solitude and seclusion of my home.

## LIABILITY FOR CALLS MADE ON BEHALF OF TSV

22. The originator of the calls was an agent, officer, or employee of Total Security Vision, Inc., and was acting within the scope of the authority given to the originator by Total Security Vision. Regardless, the calls were made on behalf of Total Security Vision, Inc.

23. Total Security Vision, Inc. knew that the call originator was sending prerecorded telemarketing messages on behalf of Total Security Vision's call center to telephone numbers on the national Do Not Call registry under circumstances in which such calls violate 47 U.S.C. 227 and the Ohio Consumer Sales Practices Act.

24. While having this knowledge, Total Security Vision failed to terminate its relationship with call originator, and instead willfully continued to receive the benefits of the unlawful telemarketing calls.

## UNJUST ENRICHMENT

25. Total Security Vision therefore was unjustly enriched by the unlawful telemarketing calls. Namely, Total Security Vision benefited financially from the unlawful telemarketing calls described herein.

   a. Total Security Vision was paid to act as the telemarketing call center that processed these calls.

b. Total Security Vision was paid to act as the call center that provided customer service for products and services purchased as a result of the unlawful telemarketing calls.

CIVIL CONSPIRACY TO CAUSE TORTIOUS INJURY

26. Total Security Vision, Inc., Mohammad Ullah, and Premium Outsourced Solutions entered into an agreement with each other for the purpose of deriving profit by intentionally and maliciously causing injury to Ohioans by making illegal telephone calls that invade the call recipient's right to privacy by unreasonable intrusion. The actions described in this Complaint were performed in accordance with that agreement. As a result of following that agreement, Total Security Vision, Inc. and Mohammad Ullah intentionally and maliciously caused injury to the recipients of their calls.

PERSONAL LIABILITY OF ULLAH

27. Mohammad Ullah ("Ullah") is the sole incorporator and sole officer of Total Security Vision. On information and belief, he is also the sole shareholder.

28. Total Security Vision is an alter ego for Ullah. Ullah has complete control over Total Security Vision. Each act of Total Security Vision described herein was directed by Ullah. Total Security Vision is a mere facade for the actions of Ullah.

29. Ullah created Total Security Vision in order to perpetrate fraud and illegal acts. Ullah uses Total Security Vision to commit fraud and other illegal acts:

a. Ullah uses Total Security Vision to operate a call center on whose behalf illegal telemarketing calls are made.

    b. Numerous complaints to the Better Business Bureau show that the Total Security Vision call center deals fraudulently and illegally with many persons who respond to the telemarketing calls described in this complaint. The complaints allege that the call center charges customers for services not rendered, or charges more than agreed to by the customer, or opens up credit card accounts on behalf of the customer on terms not agreed to by the customer. For example, one complaint alleges that the call center broke its promise to provide the customer with a credit card with 0% interest for 5 years in exchange for the customer's payment of $795.

30. Ullah's control over Total Security Vision was so complete that the corporation had no mind, will, or control of its own.

31. Ullah exercised his control in order to complete an illegal act against me, to wit the illegal telemarking calls on behalf of Total Security Vision. I was injured by the acts. Namely my right to privacy was violated.

32. Recognition of Total Security Vision as a corporation distinct from Ullah would be inequitable or unjust and would result in the derogation of the rights of others to receive damages due to them by virtue of the illegal acts of Ullah performed under the guise of Total Security Vision. Therefore, I ask this Court to pierce the corporate veil and find Ullah fully liable for the actions of Total Security Vision.

CIRCUMSTANCES WHICH JUSTIFY TREBLE AND PUNITIVE DAMAGES

33. The Defendants performed the actions described in the preceding paragraphs willfully and knowing that the actions violate the TCPA and Ohio law. The Defendants performed these actions with the purpose of deriving profit from causing tortious injury, namely invading my

right to privacy, and the Defendants should have reasonably expected that their actions would cause this injury. The Defendants performed these actions with willful, reckless disregard of my rights, and hence the actions demonstrate malice.

## CLASS ACTION ALLEGATIONS

34. On information and belief, telemarketing calls substantially the same as the ones described in ¶ 6 were made indiscriminately on behalf of Total Security Vision to nearly all residential telephone numbers in Clermont County, Ohio. Moreover, nearly all of these calls were illegal because the called person did not previously consent to receive pre-recorded telephone messages on behalf of Total Vision Security.

35. U.S. Bureau of Census estimates that there are 74,184 households in Clermont County, Ohio. Accordingly, on information and belief, there are approximately seventy-four thousand persons in Clermont County who have claims against Total Security Vision for unlawful telemarketing.

36. The proposed class shall consist of all individuals in Clermont County, Ohio who received a call initiated with an artificial or prerecorded voice, on behalf of Total Security Vision, to a residential or cellular telephone line and who did not consent to receive such call. The class shall exclude individuals who agreed to purchase anything offered through a Total Security Vision call center, unless such individual opts in to be included in the class and waives any claims with respect to that purchase. The class shall exclude agents, employees, officers, shareholders, and attorneys of Total Security Vision.

37. I am a member of the class. My claims are typical of the claims of the class.

38. The class is so numerous that joinder of all members is impracticable.

39. There are questions of law or fact common to all members of the class, for example, whether the calls constitute "telemarketing" under 47 U.S.C. § 227 ("the TCPA"), whether the calls are unlawful under the TCPA, what liability does Total Security Vision have under the TCPA for the calls, how many violations of the Ohio Consumer Sales Practices Act occurred per call.

40. I shall fairly and adequately protect the interests of the class. I have successfully prosecuted several TCPA cases in this Court in an individual capacity. I shall designate class counsel (to be determined) who will adequately represent the class.

41. The questions of law or fact common to the class members predominate over any questions affecting only individual members. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy. If each class member prosecuted his or her claims on an individual basis, the sheer number of individual lawsuits would overwhelm the court.

WHEREFORE, the Plaintiff asks that the Court grant all the following relief:

1. Award class members $1500 for each violation of 47 U.S.C. § 227(b), $1500 for each call which violated 47 U.S.C. § 227 (c), and $200 for each violation of Ohio Rev. Code § 1345.02. See 47 U.S.C. § 227(b)(3), § 227(c)(5), Ohio Rev. Code § 1345.09(B), and *Charvat v. NMP, LLC*, 656 F. 3d 440, 448-452 (6th Cir 2011). Each pre-recorded telemarketing call to a telephone number on the national Do-Not-Call registry contains at least four distinct violations of Ohio Rev. Code § 1345.02.

11

2. Issue a permanent injunction prohibiting Mohammad Ullah from telemarketing, including owning, operating, or being employed by any business that does telemarketing or that provides services that are commonly used in telemarketing or that assists telemarketing in any way.
3. Award costs, attorney fees, and interest.
4. Such further relief as may be appropriate.

Respectfully submitted,

/s/ Vincent Lucas
Vincent Lucas
P.O. Box 272
Amelia, OH 45102
(513) 947-1695
vincentlucaslegal@gmail.com
Plaintiff

Of counsel:

Alfred Lucas (027737)
7943 Gildersleeve Dr.
Kirtland, OH 44094
avlucaslegal@gmail.com