**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

VINCENT LUCAS,                                              Case No. 1:16-cv-1102

              Plaintiff,                                      Barrett, J.
                                                           Bowman, M.J.

     v.

TOTAL SECURITY VISION, INC., et al.,

              Defendants.


## REPORT AND RECOMMENDATION

On November 23, 2016, Plaintiff, an experienced *pro se* litigant, filed the above-captioned case. Pursuant to local practice, the case was referred to the undersigned when Plaintiff filed his complaint *pro se*.[1]  In January 2017, Plaintiff began proceeding through counsel.

Currently pending before the Court are Defendants' motion to dismiss and Plaintiff's motion for summary judgment.  Plaintiff also has filed a motion seeking to amend his complaint.  For the reasons that follow, Defendants' motion should be granted, and Plaintiff's motions should be denied.

---

[1]Plaintiff has filed at least seven *pro se* lawsuits in this Court alone, all containing similar allegations of illegal telemarketing practices.  In addition to the above-captioned case, see Case No. 1:11-cv-409 (closed), Case No. 1:12-cv-630, Case No. 1:15-cv-108 (closed), Case No. 1:16-cv-790, Case No. 1:16-cv-1127 (closed), and Miscellaneous Case No. 1:17-mc-02 (closed). Plaintiff initiated an eighth case, Case No. 1:17-cv-47 (closed), through the same counsel listed herein.  In addition, Plaintiff has informed this Court of related litigation he has pursued in several state courts.

## I. Defendants' Motion To Dismiss and Plaintiff's Motion for Summary Judgment

On December 28, 2016, Defendants filed a motion to dismiss this case as barred by the doctrine of claim preclusion or *res judicata*,[2] based upon the judgment previously entered in *Lucas v. Jolin, et al.*, Case No. 1:15-cv-108. On January 21, 2017, Plaintiff filed a motion for summary judgment, citing the same doctrine.

### A. Defendants' Alternative Argument Re Unjust Enrichment

In addition to the general bar of claim preclusion, Defendants have included an alternative argument seeking dismissal of Plaintiff's unjust enrichment claim for failure to state a claim. In his response, Plaintiff states that he "no longer intends to pursue 'unjust enrichment' as a separate legal theory of liability." (Doc. 8). Thus, at a minimum, Defendants' motion should be granted as to the unjust enrichment claim.

### B. Claim Preclusion Requires Dismissal of this Lawsuit

Turning to the primary issue of claim preclusion, there is no dispute that in Case No. 1:15-cv-108, Plaintiff alleged violations of the TCPA for exactly the same twelve calls that are at issue in this case. There, Plaintiff alleged violations of the TCPA, the Ohio Telemarketing Act, the Ohio Telephone Solicitation Act, the Ohio Consumer Sales Practices Act, and a common-law claim for invasion of privacy. The complaint alleged that Defendant Victor Jolin placed calls to Plaintiff's residential telephone number, which Plaintiff alleged was on a national "Do Not Call" registry. In Case No. 1:15-cv-108, Plaintiff twice amended his complaint to add additional defendants, including Premium

---

[T]The Court prefers the use of the English phrase over the Latin term.

Outsourced Solutions, Inc. ("POSI").[3]  (Docs. 10, 32).  In his amended complaint, Plaintiff alleged that Victor Jolin was an officer of Defendant Net VOIP, and that Jolin made the offending telemarketing calls on behalf of POSI.  (Case No. 1:15-cv-108, Doc. 32 at ¶¶ 8-9, 11-12).  Eventually, Plaintiff obtained a default judgment in the amount of $22,800 against Defendant Kevin Jay Calvin, and a separate default judgment of $45,600 against Jolin, POSI, and two other Defendants identified as Visram, Inc. and Shawn Wolmuth.  Claims against the last remaining Defendant, Net VOIP, were dismissed pursuant to a settlement agreement.[4]  Although an R&R on post-judgment motions remains pending before the presiding district judge, the case was administratively closed on October 21, 2016.  (*See* Docs. 91, 101).

In the above-captioned case, Plaintiff seeks relief for identical telephone calls, but has named two new Defendants, a Florida corporation called Total Security Vision, Inc., ("TSV") and Mohammad Ullah, identified as "the sole officer" of TSV.  Without reference to the prior case,[5] Plaintiff alleges in this new action that the two Defendants are in privity with POSI, one of the Defendants against whom he obtained a default judgment in the prior litigation.  Plaintiff now alleges that Defendant TSV "operated the telemarketing call center which processed these calls" and did so on behalf of POSI.  (Doc. 1 at ¶¶ 7, 9).  Plaintiff further alleges that TSV "received pecuniary benefit" from

---

[3]Plaintiff's original complaint named Victor Jolin, Visram, Inc., and "John Doe."  Plaintiff's first amended complaint identified the "John Doe" as Kevin Jay Calvin and added Starion Energy Inc.  Plaintiff subsequently dismissed Starion Energy Inc.  (Docs. 28, 31, 37, 38).

[4]Plaintiff criticizes Defendants' reference to the prior settlement, but as discussed below, the undersigned finds no impropriety.

[5]Defendant criticizes Plaintiff for failing to disclose Case No. 1:15-cv-108 as a related case when he completed his civil cover sheet in this case. (Doc. 1-1).  However, the form's instructions required Plaintiff to list only "related pending cases." Civil Action No. 1:15-cv-108 was no longer pending at the time the instant complaint was filed.

POSI for operating the call center.  (*Id.* at ¶ 13).  Plaintiff newly alleges that individual Defendant Ullah "personally approved or directed" the telephone calls.  (*Id.* at ¶¶ 13-15). Thus, based on the allegations in the instant complaint, Plaintiff alleges that Total Security Vision and Ullah, as agents of POSI, participated in the same unlawful calls for which Plaintiff obtained a default judgment against POSI in Case No. 1:15-cv-108.

Review of the two complaints confirms striking similarities.  In fact, Paragraph 6 of the complaint in this action and Paragraph 8 of the second amended complaint in Case No. 1:15-cv-108 contain verbatim allegations regarding the same twelve calls. Both complaints allege verbatim the same messages, and both complaints allege the same causes of action (FTCPA, OTSA, OCSPAQ and invasion of privacy), though Plaintiff seeks to maintain an additional claim for civil conspiracy in his current case.  In the prior action, Plaintiff alleged that it was Jolin who made the calls on behalf of POSI (and Net VOIP), and that POSI received "substantial revenue" for the calls.  (Doc. 32, ¶¶ 9, 11-12).  Now, Plaintiff alleges similarly that TSV "operated the telemarketing call center which processed these calls" and did so on behalf of POSI, that TSV "received pecuniary benefit," from POSI for operating the call center, and that it was Ullah who directed TSV's operations.  (Doc. 1 at ¶¶ 7, 9, 13).

Defendants argue that Plaintiff should not be permitted to proceed in a new lawsuit for the same twelve telephone calls.  Claim preclusion typically requires four elements:  (1) a final decision on the merits; (2) a subsequent action between the same parties or their "privies"; (3) an issue which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.  *Bragg v. Flint Bd.*

*of Education*, 570 F.3d 775, 776 (6th Cir. 2009) (quoting *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 880 (6th Cir.1997)).

With respect to the first element, the prior default judgment Plaintiff obtained against Jolin and POSI was equivalent to a final judgment on the merits for purposes of claim preclusion, even though a default judgment is not considered to be binding in the context of the related doctrine of issue preclusion. *See e.g., Micropower Group v. Ametek*, 953 F. Supp.2d 801, 810 (S.D. Ohio 2013); *United States v. DePaulo*, 466 F. Supp.2d 476, 484 and n. 9 (S.D.N.Y. 2006). Defendants persuasively argue that the remaining elements of claim preclusion also are present, assuming for purposes of their motion that Plaintiff's allegations are true.

Ironically, Plaintiff does not dispute that claim preclusion applies to his claims in this case. Rather than warranting dismissal of this case in Defendants' favor, however, Plaintiff seeks entry of summary judgment in his favor through the *offensive* application of the same doctrine.

Plaintiff's attempt to use the doctrine offensively rests upon an erroneous assertion that the newly identified Defendants have admitted that they are "in privity" with POSI in Case No. 1:15-cv-108. In their motion to dismiss, Defendants argue that claim preclusion applies based on the allegations of the complaint. Specifically, Defendants assert that Plaintiff's complaint satisfies the first element of claim preclusion because his allegations "make[] clear that Total Security Vision and Ullah are in privity for *res judicata* purposes with POSI…." (Doc. 5 at 9). Plaintiff seizes upon this sentence as if it were an admission rather than an argument. (*See* Plaintiff's motion,

5

Doc. 7 at 5, "Defendants admit that they are in privity with POSI and that all other requirements for res judicata are satisfied.").

Contrary to Plaintiff's belief, Defendants' argument is not an admission. When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a trial court must take the allegations of the complaint as true. *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir.1999). Consistent with the requisite standard of review under Rule 12(b)(6), Defendants' argument merely takes Plaintiff's own allegations at face value to explain why the complaint "effectively" pleads that Total Security Vision and Ullah are in privity with POSI based upon agency principles. (Defendants' motion, Doc. 5 at 9).

Defendants rightly object to Plaintiff's attempt to use claim preclusion offensively on the record presented. None of the case law cited by Plaintiff supports his creative argument. Common sense suggests that holding a new party, who was not named in the prior litigation, liable for a different defendant's default judgment in the prior lawsuit would be manifestly unfair, absent circumstances akin to seeking relief against a successor corporation. *See, e.g. Harlem Globetrotters, Inc. v. Harlem Magicians, Inc.*, 872 F.2d 1025 (Table, text available at 1989 WL 40238)(6th Cir. 1989) (noting that offensive *res judicata* is treated differently than defensive application of the doctrine). Plaintiff relies most heavily upon case law that is not from this Circuit, and/or that is distinguishable both factually and legally.

This is not the first time that Plaintiff has sought to hold a newly identified defendant liable for a default judgment previously obtained against a different defendant. In fact, in the very same prior case now at issue, the undersigned refused

6

Plaintiff's efforts to hold Aurelio "Victor" Jolin liable for a prior default judgment that Plaintiff had obtained against a Philippine corporation ("Qall Cord") in Case No. 1:12-cv-630.  The undersigned wrote: "Jolin was not a party to Case No. 1:12-cv-630, but Plaintiff alleges that he nevertheless should be held personally liable for Qall Cord's debt."  (Case No. 1:15-cv-108, Doc. 85 at 3).  In the Report and Recommendation filed on July 15, 2016 and adopted as the opinion of the Court on September 19, 2016, the undersigned explained that Jolin could not be held liable for the default judgment obtained against Quall Cord in the prior case, rejecting Plaintiff's theories as "novel" and legally unsupported.  "The fact remains that Plaintiff failed to assert his prior claims against Jolin regarding the telephone calls at issue in his claims against Qall Cord [in Case No. 1:12-cv-630], and Jolin had no opportunity to litigate the matter."  (*See generally*, Case No. 1:15-cv-108, Doc. 85 at 5-6).

Despite his lack of success in holding Jolin liable for Qall Cord's default judgment in Case No. 12:cv-630, Plaintiff succeeded in obtaining judgments against Jolin and other defendants in Case No. 1:15-cv-108, as both telemarketers and sellers, on claims based on the same calls now at issue.  (*See* Doc. 85 at 6-8, discussing "relatively complex series of intertwined relationships" alleged by Plaintiff between and among differing Defendants, pleaded under "alternative agency theories of liability whereby each of the Defendants share joint and several liability.").  Just as this Court previously rejected Plaintiff's attempts to hold Jolin liable for a default judgment entered against Qall Cord in Case No. 1:12-cv-630, so too should the Court reject Plaintiff's attempts to accomplish the same result through the offensive use of claim preclusion in the above-captioned case.

7

Instead of applying claim preclusion in Plaintiff's favor, the undersigned agrees with Defendants that they are entitled to dismissal of the instant complaint under Rule 12(b)(6), based upon the allegations as pleaded.  Even if Plaintiff's own allegations of privity among Ullah and TSV in this case and POSI in Case No. 1:15-cv-108 were not sufficient to apply the doctrine, the undersigned would still recommend dismissal of the instant lawsuit based upon the closely related doctrine of *nonmutual* claim preclusion.

Under that doctrine as applied in the Sixth Circuit, courts take a "common sense" approach, and may find dismissal to be appropriate where the subsequent lawsuit arises out of the same operative facts with only slight changes to the legal theory asserted or the parties sued.  *See generally Randles v. Gregart,* 965 F.2d 90, 93 (6th Cir.1992) (*per curiam*) (upholding dismissal of successive complaint against new defendants, citing generally *United States v. Mendoza,* 464 U.S. 154, 158-59 (1984); *Parkland Hosiery Co. v. Shore,* 439 U.S. 322, 331(1979)); *see also Heritage Hills Fellowship v. Plouff,* 555 F. Supp. 1290, 1295-96 (E.D. Mich. 1983).   In *Gregart*, the Sixth Circuit also cited with approval *Hazzard v. Weinberger,* 382 F. Supp. 225, 226-229 (S.D.N.Y. 1974), *aff'd,* 519 F.2d 1397 (2d Cir.1975), in which the court held that nonmutual claim preclusion is appropriate when a pro se litigant brings repeated actions upon the same operative facts with slight change in legal theories and "cast of characters-defendants."

## C. Additional Issues Raised in Plaintiff's Motion for Summary Judgment

For the reasons discussed above, Defendants' motion to dismiss should be granted, which would render moot Plaintiff's later-filed motion for summary judgment.

The undersigned will nevertheless address Plaintiff's motion in the alternative, to the extent that any reviewing court may disagree with the recommended dismissal of this case.

Plaintiff's motion for summary judgment is reviewed under a different standard than that applicable to Defendants' Rule 12(b)(6) motion.  In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c))(internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

### 1.  Declaratory Judgment Claim

In his motion for summary judgment, Plaintiff appears to alternatively argue that if he does not win on offensive claim preclusion, then the instant complaint can be viewed as an entirely distinct claim seeking a declaratory judgment to collect upon or enforce the prior default judgment in Case No. 1:15-cv-108.  That argument is nonsensical, as it ignores the fact that the complaint herein contains allegations and causes of action that are virtually identical to the prior litigation, and notably does <u>not</u> seek a declaratory judgment action *or even so much as reference Case No. 1:15-cv-108.*

Nevertheless, Plaintiff cites Rule 54(c) as supporting relief. That provision states that "Every…final judgment [other than default] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." The focus of the rule is on the "relief" granted by the judgment, not causes of action. Thus, the rule is typically invoked to award injunctive relief after trial where such relief was not specifically pleaded, or to adjust monetary damages in accord with the evidence presented.

The rule does not support the grant of summary judgment against Ullah and TSV in the circumstances presented here, at the outset of litigation, on a substantive legal theory that is nowhere included in Plaintiff's complaint   A Rule 54(c) motion "is committed to the sound discretion of the trial court." *Stewart v. Furton*, 774 F.2d 706, 710 (6th Cir. 1985). Under Rule 54(c), "a party may not be 'entitled' to relief if its conduct…has improperly and substantially prejudiced the other party." *Albemarle Paper Co. v. Moody*, 95 S.Ct. 2362, 2375 (1975*); see also Stewart v. Furton*, 774 F.2d at 710. In other words, one cannot file suit based upon one cause of action, and then use Rule 54(c) to claim entitlement to relief on a wholly unrelated cause of action where the complaint provided the defendant neither notice of the claim nor grounds for the claim. The exercise of discretion under Rule 54(c) to grant Plaintiff a final judgment for declaratory relief regarding a prior case not referenced in Plaintiff's complaint would be especially disfavored here, where the litigation remains in its infancy, prior to entry of a scheduling order or the formal commencement of discovery.

The undersigned also recommends denying the use of Rule 54(c) in the unusual fashion advocated by Plaintiff because the underlying judgment in Case No. 1:15-cv-

108, for which Plaintiff now seeks to hold the newly identified Defendants liable, was a default judgment. Rule 54(c) on its face cannot be used to alter the relief granted in a default judgment. Thus, the rule could not have been used in Case No. 1:15-cv-108 to enter judgment against additional parties who were not identified in that litigation. Even though Plaintiff's current motion seeks summary judgment on his new "agency" theory (that TSV is the alter ego of Ullah, and liable for POSI's prior default judgment as an agent of POSI), that theory's relationship to the prior default judgment in Case No. 1:15-cv-108 disfavors the exercise of this Court's discretion under Rule 54(c).

### 2. Alleged Privity Between Ullah, TSV, POSI and/or Net VOIP

For the reasons discussed, the undersigned rejects Plaintiff's false premise that Defendants' <u>argument</u> in favor of claim preclusion constitutes some type of admission that Defendants Ullah and TSV are in privity with POSI and therefore should be held liable on the prior default judgment. Defendants' argument does no more than apply the standards of review required for motions filed under Rule 12(b)(6), and assumes – limited to the motion - the truth of Plaintiff's allegations of "privity" with POSI.

However, additional issues regarding privity relationships are raised by Plaintiff in his motion for summary judgment. First, Plaintiff complains that the Defendants' alleged "admission" does not go far enough, because Defendant Ullah is "the chief officer of both" Net VOIP and TSV, and therefore should have "admitted" privity with Net VOIP. (Doc. 7 at 7). Plaintiff complains that he agreed to dismiss Net VOIP in Case No. 1:15-cv-108 only after Ullah filed an affidavit in support of Net VOIP's motion for summary judgment. In that affidavit, Ullah, as President of Net VOIP, states that Net VOIP provides Voice Over Internet Protocol to businesses, presumably including POSI, that

11

allows them to use the internet as a phone service, but that Net VOIP does not <u>itself</u> "place calls or offer any kind of credit card or money services." (Doc. 68-1). Ullah also denies in the affidavit filed in the prior case that Net VOIP has ever engaged in telephone solicitation.

Plaintiff's theory in Case No. 1:15-cv-108 was that individual Defendant Jolin was closely connected to, and was an officer of, Net VOIP. In a second affidavit, Ullah denied that Jolin was an officer, or otherwise held any employment position with Net VOIP. (Doc. 74-2).[6] While Ullah admitted that Net VOIP had briefly contracted with Jolin to "design and construct certain software for Net VOIP," Ullah denied that Jolin had provided any such services for Net VOIP beyond April 2012, and denied any subsequent relationship with Jolin that would give rise to Net VOIP's liability for the subject calls. (*See* Ullah Aff., Doc. 68-1).

Piggybacking on his argument that Ullah and TSV are "in privity" with POSI and based on evidence that Ullah is officer of both TSV and Net VOIP, Plaintiff reasons that Net VOIP also must have been in privity with POSI. Therefore, Plaintiff argues that Ullah's prior affidavits (denying Plaintiff's allegations) "would be a fraud upon the Court and perjury," which Plaintiff argues would provide additional ground for relief in this case "on grounds of fraud" in the prior case. (Doc. 7 at 7).

To support summary judgment on the "privity" issue, Plaintiff has attached evidentiary exhibits[7] to his motion that purport to show a nexus between a telephone

---

[6]Since Plaintiff dismissed Net VOIP soon after it filed its motion for summary judgment in Case No. 1:15-cv-108, neither the Ullah's affidavits nor Net VOIP's motion were ever reviewed on the merits.

[7]Although no calendar order has been entered and formal discovery has not yet begun in the above-captioned case, some of the same exhibits appear to have been previously used in Case No. 1:15-cv-108.

number "assigned" to TSV and the same number being used by prior Defendant POSI. Similar allegations appear in Plaintiff's complaint in this case. (*See* Doc. 1 at ¶¶ 10-14).

Like his argument regarding the "admission" allegedly made by Defendants in their motion to dismiss, Plaintiff's arguments go too far and assume too much on theories not pleaded in his complaint. He assumes without evidence that TSV and Net VOIP are not separate entities, based (apparently) on the fact that Ullah is a principal of each. Absent more compelling evidence, this Court will not disregard corporate formalities so easily.

The exhibits attached to Plaintiff's motion for summary judgment also fail to provide conclusive proof that Ullah and TSV in this case should be held liable for POSI's debt in the prior case. Several exhibits suggest that an "877" toll-free number is used by POSI. (Docs. 7-3, 7-4, 7-5). Another (single) exhibit connects the same "877" telephone number to TSV. (Doc. 7-1). The latter exhibit is a copy of an email dated July 20, 2015 from "Abgcapital Subpoena Group" that states as follows:

> We have received your request for subscriber information on 7/20/2016.
>
> We are a wholesale provider, and in most situations, our customer is either another reseller or another type of wholesale customer. Often, but not in all cases, our customer is providing services of the end user. Information for our customer is below.
>
> For the time period of 11/5/2012 through 7/20/2016, DID 8773714525 was assigned to:
>
> TOTAL SECUIRTY VISION….

Even assuming the exhibit is properly authenticated, there is no information to identify "Abgcapital Subpoena Group" or the validity of the information it has provided, or how the purported "assignment" of a telephone number to TSV should result in an irrefutable

presumption that TSV operated a call center as POSI's agent at the time the 12 calls were made. Such scant evidence simply is not sufficient to support entry of summary judgment against Ullah and TSV in this case under Rule 56 standards. In short, the undersigned finds insufficient evidence to support judgment on a theory not pleaded, that Ullah and TSV should be held liable for the default judgment entered against POSI in Case No. 1:15-cv-108.[8]

### 3. Settlement Agreement in Prior Case No. 1:15-cv-108

Plaintiff's motion for summary judgment also seeks this Court's determination on another claim not strictly within the confines of his complaint: an alleged breach of a settlement agreement between Ullah, Net VOIP, and Plaintiff in Case No. 1:15-cv-108. In their motion to dismiss, Defendants briefly referenced the settlement when they stated that Plaintiff had "obtained a judgment of $45,600 in his favor against four Defendants, as well as a settlement of claims against another Defendant." (Doc. 5 at 3). In a subsequent reiteration, Defendants added: "Defendant Net VOIP was dismissed with prejudice pursuant to an extrajudicial resolution of Lucas's claims against Net VOIP." (Doc. 5 at 4). In his motion for summary judgment filed in this case, Plaintiff seemed to question the existence of any prior settlement. (*See* Doc. 7 at 7 and note 4 *infra*, accusing Defendants of failing to "provide any evidence of such 'settlement'").

In their response to Plaintiff's motion, Defendants attached a copy of the Settlement Agreement as an exhibit. (Doc. 11-6). The Settlement Agreement releases

---

[8]The undersigned makes no determination on the propriety of any future judgment against Ullah and TSV, should a reviewing court disagree with the recommendation that this case be dismissed pursuant to Defendants' motion.

Net VOIP, its affiliates, and all employees, directors and officers from any and all claims relating to the telephone calls alleged in the prior case (the same calls at issue here). (Doc. 11-6, ¶ 3).  Defendants point out that Ullah, who signed the settlement agreement on behalf of VOIP, and who Plaintiff identifies in the instant complaint "individually and in his capacity as officer of" TSV in this case, was a released party in the prior case.

Plaintiff argues that Ullah was released in Case No. 1:15-cv-108 only for his involvement with Net VOIP, and not for his separate involvement and alleged liability for the actions of TSV in this instant lawsuit.  In other words, Plaintiff contends that he has adequately pleaded a new claim that is not encompassed by the prior Settlement Agreement, because the Agreement made clear that it released only Net VOIP, and not "any other defendant….or any of their ….vendors, contractors….and agents…." (Doc. 11-6 at ¶3, emphasis added).  Plaintiff reasons that TSV should be considered as a "vendor, contractor, and/or agent of POSI" and therefore that neither TSV nor Ullah should be considered as released parties.  Despite Ullah being released in his role with Net VOIP, Plaintiff argues that he has adequately alleged that Ullah is being sued in a different role here, based upon the actions of TSV.  (Doc. 1 at ¶28, alleging that TSV is an alter ego for Ullah, and that Ullah has directed each act of TSV).   Thus, Plaintiff argues that the prior Settlement Agreement does not bar the new claims against Ullah and TSV.  Plaintiff explains that he is not suing Ullah for his prior role with Net VOIP, but instead he is alleging here that TSV is an agent of POSI, as well as an alter ego for Ullah, and that Ullah is therefore an agent of POSI.  The resolution of this is more fully explained in the next section.

15

## II.    Plaintiff's Motion to Supplement His Complaint to Add New Claims for Breach of Contract and Offensive Res Judicata

Consistent with the theories put forth in his motion for summary judgment, Plaintiff has moved to supplement his complaint under Rule 15(d), to add the new claims on which he seeks summary judgment. Defendants oppose the motion on grounds of futility.

Plaintiff first seeks to add a new claim for breach of contract, based upon Defendants' allegedly improper disclosure of the existence of the Settlement Agreement. As stated, Defendant's motion to dismiss contained two cursory references to a "settlement" and an "extrajudicial resolution" of Plaintiff's claims against Net VOIP in Case No. 1:15-cv-108. Plaintiff questioned the reference in his motion for summary judgment. "Defendants repeatedly encourage this Court to speculate about some supposed 'settlement' between Net VoIP and Plaintiff" but "do not provide any evidence of such 'settlement', or provide a basis for the court to take judicial notice." (Doc. 7 at 7). In their response to Plaintiff's motion, Defendants provided the "evidence" that Plaintiff so clearly challenged, through inclusion of a copy of the Settlement Agreement as an exhibit.

Plaintiff should not be permitted to amend his complaint in this case to allege a new claim of breach of contract based upon Defendants' disclosure of the prior Settlement Agreement. The Agreement provides for this Court to be the arbiter "over all matters related to the enforcement of this Settlement Agreement." (*Id.* at ¶11). On its face, the Defendants' cursory reference to the settlement in their motion to dismiss cannot be viewed as a material breach. This Court itself referenced the settlement

between Net VoIP and Plaintiff in a public record filed in the earlier case. (*See* Case No. 1:15-cv-108, Doc. 83, stating: "On June 28, 2016, defense counsel for Net VoIP telephonically advised the Court that Plaintiff and Net VoIP have conditionally resolved Plaintiff's claims as to that Defendant, subject to the entry of the agreed dismissal.").

Moreover, several terms of the Settlement Agreement sanction the disclosure made in this case. Plaintiff relies on the confidentiality provision in Paragraph 9 of the Agreement, but disclosure to third parties is expressly permitted when "such disclosure is (a) lawfully required by any court or governmental agency; (b) otherwise required to be disclosed by law; [or] (c) <u>necessary in any legal proceeding in order to enforce any</u> <u>provision of this Agreement</u>…" (Doc. 11-6 at ¶ 9, emphasis added). Additionally, Paragraph 7 provides the Agreement may be used "as a complete defense as to any past, present, or future claim asserted with respect to the events that related to" Case No. 1:15-cv-108.

Defendants make several counter-arguments concerning Ullah's role in signing the prior Agreement. It is not necessary to delve into the substance of the arguments here, because I conclude the disclosure of the Settlement Agreement and the contents thereof is "necessary" to determine the issues of claim preclusion and/or release in the instant litigation. Plaintiff also invited disclosure when he strongly implied to this Court that no Settlement Agreement existed.

In addition to the new breach of contract claim, Plaintiff seeks to add a new claim to support the offensive use of res judicata and Plaintiff's theories that Ullah and TSV are in privity with POSI. Plaintiff bases his new claim in part on Defendants' admission in their pending motion to dismiss that Plaintiff's complaint pleads an agency

relationship. For the reasons previously discussed, Defendants have made no such admission. Moreover, because the undersigned has recommended granting the Defendants' motion to dismiss, Plaintiff should not be permitted to amend at this time.

### III. Retention of Counsel and Class Action Allegations

While not necessary to the recommended disposition of the pending motions, the appearance of counsel in this case is sufficiently unusual to warrant brief additional comment.

The complaint that Plaintiff initially filed *pro se* represents that he is filing on behalf of himself "and all others similarly situated." (Doc. 1). However, it is well-established that a *pro se* litigant can represent only himself; he cannot represent any other person. For the same reasons, a *pro se* plaintiff cannot prosecute a class action as a class representative. *Palasty v. Hawk*, 15 Fed. Appx. 197, 200 (6th Cir.2001); *Giorgio v. Tenn. Dep't of Human Servs.*, No. 95–6327, 1996 WL 447656, at *1 (6th Cir. Aug. 7, 1996) ("Because a layman does not ordinarily possess the legal training and expertise necessary to protect the interests of a proposed class, courts are reluctant to certify a class represented by a pro se litigant."); *see also Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir.1975) (*per curiam*). Therefore, Plaintiff would not be permitted to bring a class action lawsuit had he continued to proceed *pro se*.[9]

The original complaint bore only the signature of Plaintiff Vincent Lucas, but included the typed name "Alfred V. Lucas" and the notation "of counsel" below Plaintiff's

---

[9]To the extent that Plaintiff hopes to serve as the representative in a class action lawsuit under Rule 23 of the Federal Rules of Civil Procedure and associated Local Rules 23.1, 23.2 and 23.3, the complaint does not include the prominent designation "Class Action" as mandated by Local Rule 23.1. However, any other consideration of issues relating to Plaintiff's "class action" allegations is both premature, and moot in light of the recommended disposition of the pending motions.

signature.  Although the Court infers the existence of a familial relationship based upon the identity of Plaintiff's and counsel's surname, the precise relationship between Plaintiff and Alfred remains unclear.

Ohio Supreme Court records reflect that Alfred was admitted to practice in 1968 in Ohio, and that he was admitted to practice in the Southern District of Ohio on December 12, 2016, through attendance at an Admissions Seminar and ceremony in Columbus, Ohio.

The listing of Alfred's name as "of counsel" without a signature on the original complaint did not comply with Rule 11, Fed. R. Civ. P.; therefore, the complaint was docketed as if Plaintiff had filed *pro se*.[10]  However, on January 21, 2017, Plaintiff filed a motion for summary judgment that was "respectfully submitted" with Plaintiff's name and typed signature, but with Alfred's name listed immediately below Plaintiff's name, bearing a "/s" typed signature along with Alfred's attorney number.  The motion appears to have been filed by Alfred, and his electronic signature on the motion constitutes a valid signature for purposes of Rule 11.  Based upon the inclusion of an attorney signature, on January 22, 2017 the Clerk of Court modified the record to reflect that Plaintiff now proceeds through counsel, and is no longer *pro se*.  Beginning with counsel's first appearance on Plaintiff's dispositive motion, all documents filed under Alfred's attorney number have been "co-signed," with Plaintiff's typed signature listed first, followed by Alfred's typed signature.

---

[10]By contrast, in Case No. 1:17-cv-47, the only other case in which Plaintiff did not proceed pro se, the complaint bore the handwritten signature of Alfred Lucas.  Case No. 1:17-cv-47 also contained "class action" allegations but was dismissed on March 8, 2017.

The "co-signing" of documents by a represented party is highly unusual.  Still, it is not on its face contrary to any rule or procedure.  Regardless, the undersigned would caution both counsel and Plaintiff that filing documents under counsel's name and signature constitutes an affirmation that counsel personally affirms that the document is in full compliance with Rule 11, Fed. R. Civ. P., and the Local Rules of this Court.

## IV.    Conclusion and Order

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendants' motion to dismiss (Doc. 5) be **GRANTED**, and that this case be dismissed with prejudice and closed.  **IT IS FURTHER RECOMMENDED** that Plaintiff's motions for summary judgment and to supplement his complaint (Docs. 7, 12) be **DENIED**.

_s/Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

VINCENT LUCAS,                                    Case No. 1:16-cv-1102

        Plaintiff,                         Barrett, J.
                                                       Bowman, M.J.

    v.

TOTAL SECURITY VISION, INC., et al.,

        Defendants.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).