UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VINCENT LUCAS,  Case No. 1:16-cv-1102

    Plaintiff,  Barrett, J.
                                                                                                    Bowman, M.J.

    v.

TOTAL SECURITY VISION, INC., et al.,

    Defendants.

## REPORT AND RECOMMENDATION

On November 23, 2016, Plaintiff, an experienced *pro se* litigant, filed the above-captioned case. Pursuant to local practice, the case was referred to the undersigned when Plaintiff filed his complaint *pro se*.[1] Currently pending before the Court are Plaintiff's motion to strike certain affirmative defenses contained in Defendants' Amended Answer, and Defendants' motion for leave to file a counterclaim. For the reasons that follow, Defendants' motion should be granted, and Plaintiff's motions should be denied.

**I.    Background**

The history of this case and that of a related prior case were the subject of an R&R filed on May 1, 2017 by the undersigned. The R&R recommended granting the

---

[1] Plaintiff has filed at least nine lawsuits in this Court alone, most of which contain similar allegations of illegal telemarketing practices. Although Plaintiff filed this case *pro se*, he was briefly represented by attorney Alfred V. Lucas before returning to his *pro se* status in October 2017. In addition to the above-captioned case, *see* Case No. 1:11-cv-409 (closed), Case No. 1:12-cv-630 (closed), Case No. 1:15-cv-108 (closed), Case No. 1:16-cv-790, Case No. 1:16-cv-1127 (closed), Case No 1:17-cv-47 (closed); Case No. 1:17-cv-374 (closed), Miscellaneous Case No. 1:17-mc-02 (closed), and most recently, Case No. 2:18-cv-582. Plaintiff has informed this Court of related litigation he has pursued in several state courts.

1

Defendants' motion to dismiss this case as barred by res judicata or claim preclusion,[2] and denying Plaintiff's counter-motion for summary judgment, based upon the close relationship between the claims made in this case to claims previously litigated by Plaintiff in Case No. 1:15-cv-108. (Doc. 17). The R&R, noting that the 12 phone calls that form the subject matter of this case are the exact same phone calls that formed the subject matter of Case No. 1:15-cv-108, reasoned that Defendants had demonstrated that Plaintiff had pleaded all four elements required to show claim preclusion, including privity with a prior Defendant in Case No. 1:15-cv-108, referred to by the acronym "POSI." (Doc. 18 at 4-5). The R&R recommended denial of Plaintiff's counter-motion for summary judgment, which sought the *offensive* use of claim preclusion against the Defendants, as contrary to law.[3] Last, the R&R recommended denying a proposed amendment to the Plaintiff's complaint in this case. (*Id.*)

On September 29, 2017, the presiding district judge partially sustained Plaintiff's Objections to the R&R, holding that Plaintiff's claims survived the Defendants' motion to dismiss without prejudice to renew Defendants' arguments, if appropriate, on summary judgment. (Doc. 20). In his Objections, Plaintiff had argued (in part) that the Defendants

---

[2]The undersigned disagrees with Plaintiff's accusation that the use of the phrase "claim preclusion" in the prior R&R demonstrates that the undersigned "does not understand that res judicata includes more than just claim preclusion," (Doc. 18 at 7). It is true that some courts have held res judicata to encompass both "issue preclusion (collateral estoppel) and claim preclusion (res judicata in its narrow sense). *Heyliger v. State University and Community College System of Tenn.*, 126 F.3d 849, 851-852 (6th Cir. 1997). However, it is equally true that other courts have separated the concepts, and defined res judicata more narrowly. *See id.* (noting the "perennial confusion over the vocabulary and concepts" and quoting the Supreme Court's exposition of the concepts in *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984)). The Sixth Circuit has repeatedly expressed a preference for the English phrases over the Latin, *see id.*, as have many commentators. Because the instant case focuses on the concept of claim preclusion, the undersigned previously articulated her preference for the English phrase. However, based on the Plaintiff's adherence to the Latin phrase and the use of the same by the presiding district judge, the undersigned will revert to the use of "res judicata."
[3]*See* R&R, Doc. 17 at 6-7.

were not entitled to dismissal of his complaint based upon allegations that he had pleaded "privity" in a manner that could support res judicata against him. Instead, Plaintiff argued that his complaint had not alleged that the Defendants were in privity, but had alleged only that Defendants "were acting as agents of" POSI in the prior case. Only after the Defendants argued that Plaintiff's allegations were equivalent to an allegation of privity sufficient to support the *defensive* application of res judicata, Plaintiff argued that he was entitled to summary judgment based upon an *offensive* application of the doctrine. Alternatively, however, Plaintiff argued that if this Court did not find the Defendants to be in privity with POSI, then "[b]oth the Motion to Dismiss and the Motion for Summary Judgment must be denied." (*Id.* at 1).

In ruling on Plaintiff's Objections, Judge Barrett first pointed out that a Sixth Circuit case interpreting Ohio law arguably runs counter to Plaintiff's argument, insofar as it holds that "a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship*.*" *ABS Indus., Inc. ex rel ABS Litig. Tr. v. Fifth Third Bank*, 333 Fed. Appx. 994, 999 (6th Cir. 2009) (citations omitted). (Doc. 20 at 3-4). Nevertheless, the Court sustained Plaintiff's Objection that the privity element of res judicata had not been satisfied in the context of Defendants' motion to dismiss.[4] The Court distinguished *ABS Indus., Inc.* on grounds that there, an agreement between the parties was attached as an exhibit to the complaint that "made it indisputable that the two parties were in a principal-agent relationship." (Doc. 20 at 4).

---

[4]Aside from contesting the "privity" element required to show that the second action involves the same parties, Plaintiff's Objections did not challenge the R&R's determination that the allegations in his complaint satisfied the other three elements required to establish res judicata: (1) a default judgment against Jolin and POSI that was equivalent to a final judgment on the merits; (2) the same claims; and (3) the same transaction or occurrence. *See Micropower Group v. Ametek, Inc.*, 953 F. Supp.2d 801 (S.D. Ohio 2013).

In contrast to the "indisputable" evidence of privity in *ABS Indus., Inc.*, the Court found that here, the issue of privity could not be determined "at this early stage in the proceedings" on the pleadings alone. (Doc. 20 at 4).

> [T]he Court finds it is not presently able to determine whether a principal-agent relationship exists. The record reveals no evidence the parties had the sort of fiduciary relationship necessary to brand [Total] Security and Ullah agents of POSI. Unlike the Sixth Circuit in *ABS* wherein the Court found the "explicit allegations of agency in its complaint" along with the "specific language of the [a]greement" doomed any argument to the contrary, there is no such evidence in this case for the undersigned to properly consider at the motion to dismiss stage. *ABS*, 333 Fed.Appx. at 1001-02. Moreover, Plaintiff's perfunctory use of the "agent" is not dispositive, as the characterization of the parties' own relationship in the context of industry or popular usage is not controlling. *Id.* at § 1.02.
>
> Thus, while the Court must take the *factual* allegations of Plaintiff's Complaint as true when deciding a motion to dismiss, whether a principal-agent relationship exists is a question of law for the Court – a determination the Court is unable to make at this juncture. It may ultimately be true that res judicata applies. But Defendants have not provided, and the Court has not found, any authority that would oblige the Court to conclude based solely on Plaintiff's use of the word "agent" that res judicata bars Plaintiff's claims. Accordingly, Defendants have failed to establish res judicata applies. If appropriate, Defendants may once again raise the res judicata defense at the summary judgment stage.

(Doc. 20 at 4-5).[5]

On February 21, 2018, Plaintiff filed a first amended complaint.[6] (Docs. 30, 33). Ironically, in his amended complaint Plaintiff more clearly and indisputably alleges that "Total Security Vision is <u>in privity</u> with [POSI] for the purposes of the doctrine that 'a final

---

[5] The Court's Order partially sustaining Plaintiff's objections did not address an alternative discussion in the R&R that explained that even "if Plaintiff's own allegations of privity among Ullah and TSV in this case and POSI in Case NO. 1:15-cv-108 were not sufficient to apply the doctrine [of res judicata], the undersigned would still recommend dismissal of the instant lawsuit based upon the closely related doctrine of *nonmutual* claim preclusion. (Doc. 17 at 8). *See also, generally Randles v. Gregart*, 965 F.2d 90, 93 (6th Cir. 1992) (*per curiam,* collecting cases that discuss the related doctrines of nonmutual claim or issue preclusion).
[6] While preserving their right to file a motion to dismiss, Defendants did not oppose the amendment, which eliminated class action allegations.

4

judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and persons in privity with them' in the same manner as if the persons in privity were named as parties in the judgment." (Doc. 33 at ¶51, emphasis added). The new allegations in Plaintiff's amended complaint purport to set forth an additional claim for declaratory judgment based upon the prior case.

Although the prior R&R had recommended denial of any amendment in light of the recommended dismissal of the original complaint, the Court's Order partially sustaining Plaintiff's objections left open the door to add the new declaratory judgment claim.

> Plaintiff next objects to the Magistrate Judge's recommendation that Plaintiff's leave to amend his Complaint should be denied. First, he contends that if the Court finds his Complaint is insufficient to obtain the declaratory judgment requested in his motion for summary judgment, he should be granted leave to amend. Because the Court does not address Plaintiff's objections related to his motion for summary judgment, the Court likewise does not address whether the Complaint is sufficient to obtain a declaratory judgment in that regard. While the Court is skeptical that Plaintiff would ultimately succeed in obtaining a declaratory judgment, the Court will not foreclose the possibility of permitting him to amend his Complaint in the future, if appropriate.

(Doc. 20 at 5).

After Plaintiff filed his amended complaint, the undersigned entered a Calendar Order directing the parties to complete discovery by August 23, 2018, and to file any dispositive motions by September 30, 2018. After Defendants filed their answer to the amended complaint, Plaintiff moved to strike certain defenses in that answer. Soon thereafter, on April 23, 2018, defense counsel moved to withdraw from further representation. That motion was granted on May 25, 2018, and new counsel entered an appearance for Defendants on June 27, 2018. (Docs. 45, 46).

5

On July 18, 2018, new counsel filed a motion for leave to amend Defendants' answer in order to file a counter claim. Plaintiff opposes Defendants' motion.

For the reasons discussed, Plaintiff's motion to strike should be granted in part, and Defendants' motion to amend the answer to include a counter claim should also be granted.

## II.    Pending Motions

### A. Plaintiff's Motion to Strike Defenses

In their answer to Plaintiff's amended complaint, Defendants, through their former counsel, included a lengthy list of affirmative defenses. (Doc. 32 at ¶¶16-52). Plaintiff seeks to strike a number of specific defenses, including the following, denoted by the referenced paragraph numbers in the Defendants' answer:

20. This Court lacks personal jurisdiction over Ullah.

22. Plaintiff has failed to mitigate his damages.

26. Plaintiff's claims are pre-empted by the dormant Commerce Cause.

27. Plaintiff's claims are barred by the Due Process Clause.

32. An award of damages to Plaintiff will violate due process and/or constitute an excessive fine.

37. Plaintiff's claims are barred in whole or in part by the applicable statute of limitations.

38. At all times relevant hereto, Defendant's alleged conduct was privileged and/or justified.

46. Plaintiff's claims are barred by the Primary Jurisdiction Doctrine.

50. Plaintiff unlawfully holds himself out as an attorney licensed to practice law in the State of Ohio.

51. Plaintiff's claims are barred, in part, by the statute of frauds.

(*Id.*)

Pursuant to Rule 12(f), "upon motion made by a party…the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

> The Sixth Circuit has held that "because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir.1953) (internal citations omitted). Thus, such a motion should only be granted "when the pleading to be stricken has no possible relation to the controversy." *Id.*

*U.S. v. American Elec. Power Service Corp.*, 218 F. Supp.2d 931 (S.D. Ohio 2002).

Plaintiff argues first that the Defendants' statute of limitations (¶37) defense fails as a matter of law, since every call at issue occurred within two years of the date Plaintiff's complaint was filed. In response, Defendants argue only that they assert this defense because they have "no independent knowledge of when calls may have been placed to Plaintiff," since the Defendants deny placing those calls. However, Defendants have already asserted a "catch-all" defense, allowing them to amend and assert any new defenses that may become available through further discovery, (*see* ¶52), and Plaintiff has stated that he will not object to the Defendants amending to assert this defense if justified. At the present time, however, the undersigned does not believe such a speculative assertion of a limitations defense to be warranted, and therefore will grant Plaintiff's motion to strike that defense.

Plaintiff seeks to strike Defendants' constitutional arguments that TCPA damages are an excessive fine under the Eighth Amendment. (Doc. 32, ¶32). This Court

7

previously agreed in another case filed by Plaintiff. *See Lucas v. Desilva*, Case No. 1:16-cv-790 (S.D. Ohio) (holding that statutory damages to an individual litigant under the TCPA and OCSPA do not constitute an "excessive fine" or violation of "due process" as a matter of law, and that such defenses should be stricken). The lone Eighth Circuit case cited by Defendants, *Capital Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 907 (8th Cir. 2012), is not to the contrary.

Plaintiff seeks to strike the "Primary jurisdiction doctrine" defense (¶46) as having no application to this case. Defendants argue that the Primary Jurisdiction defense is appropriate "in the event the FCC issues orders that impact the issues in this case while the case is pending," and argues that there is "no harm to Plaintiff in having that affirmative defense in the Answer." (Doc. 37 at 3-4). Defendants' argument implicitly concedes the present inapplicability of this defense to this case; therefore, it will be stricken without leave to renew should the defense be justified based upon future events.

Next, Plaintiff seeks to strike the following defenses: the "dormant Commerce Clause" (¶ 26), "due process" (¶27), and "statute of frauds" (¶51). Plaintiff further argues that Defendants' assertion of a "failure to mitigate" defense (¶22) fails as a matter of law. Defendants do not address any of these arguments, and it is not clear how any of the referenced defenses could relate to this case. In view of the Defendants' failure to respond, the undersigned is persuaded that the defenses should be stricken. As Plaintiff points out, this Court previously struck similar defenses raised by the defendants in Case No. 1:16-cv-790. See R&R at Doc. 65, adopted at Doc. 75 (April 18, 2017).

> [T]he undersigned finds more persuasive Plaintiff's argument in favor of striking as "insufficient as a matter of law," certain defenses. *See e.g., HCRI TRS Acquirer, LLC v. Iwer*, 708 F. Supp.2d 687, 692 (N.D. Ohio 2010)

> (holding that pleading requirements for affirmative defense are the same as for claims of relief under Rule 8, striking conclusory, boilerplate defense that lacked relationship to facts in the pleadings and therefore was not plausible). Here, Discount Power's assertion of defenses relating to the statute of limitations, laches, or other time-bar (Fourth and Ninth Defenses), and its Sixteenth Defense (duty to mitigate damages), its defense that TCPA damages to a private litigant constitute an "excessive fine" under the Eighth Amendment of the U.S. Constitution, and/or its "due process" defense (Seventeenth Defense), all appear to be without merit. In response to the arguments and case law cited by Plaintiff in this regard, Defendant offers no countervailing argument or explanation of how the alleged facts could possibly support these affirmative defenses. This Court's review of relevant case law accords with Plaintiff's position that the referenced defenses are unavailable as a matter of law on the facts alleged in the pleadings.

(*Id.*)

Plaintiff seeks to strike ¶ 38, which asserts: "At all times relevant hereto, Defendant's alleged conduct was privileged and/or justified." Defendants argue that the defense is essentially duplicative of ¶41, which asserts consent as a defense, because ¶ 38 is merely another way of arguing consent and non-invasion of privacy. Defendants argue that the same defense expresses Defendants' position that Defendants do not make telemarketing calls and did not make the calls at issue. Based upon the Defendants' response, the undersigned recommends that ¶ 38 be permitted to stand.

Plaintiff additionally seeks to strike ¶50, which alleged: "Plaintiff unlawfully holds himself out as an attorney licensed to practice law in the State of Ohio." Defendants explain that this defense opposes Plaintiff's request for attorney's fees in his prayer for relief, and also is relevant to two other defenses that Plaintiff has not sought to strike, contained in ¶¶ 21 and 42, which challenge Plaintiff's standing as a "professional

9

plaintiff."[7]  Based upon the Defendants' response, the undersigned recommends that ¶50 be permitted to stand.

Last but not least, Plaintiff seeks to strike Ullah's personal jurisdiction defense (¶20).  Defendants fail to address this argument.  The undersigned agrees that the defense appears to have been waived and should be stricken.

### B. Defendants' Motion to Amend Answer to Assert Counterclaim

As stated above, new counsel entered an appearance on behalf of Defendants on June 27, 2018, and on July 18, 2018, Defendants filed a motion seeking leave to amend their answer to include a counterclaim for breach of contract against the Plaintiff. Defendants subsequently tendered their counterclaim, which alleges that this lawsuit amounts to a breach of a prior settlement agreement executed between Plaintiff and Defendants Net VOIP Communications, Inc. and Mohammad Ullah in *Lucas v. Jolin*, Case No. 1:15-cv-108.  Defendants maintain that they "are within the released parties as defined" in the Settlement Agreement in the prior case.  (Doc. 54 at ¶6).

Plaintiff filed a response opposing the proposed counterclaim. (Doc. 55).  Plaintiff complains that Defendants' motion should be denied as untimely.

Defendants' motion explains that Plaintiff's amended complaint was filed on March 12, 2018.  Prior counsel formally moved to withdraw just over a month later, on April 23, 2018, which new counsel now characterizes as "essentially contemporary to" the filing of the amended complaint on March 12, 2018.  In his opposition, Plaintiff disputes that

---

[7]*See, e.g.*, Doc. 37 at 2, asserting that Plaintiff is "a professional plaintiff who is in the business of suing a multitude of telemarketers and other companies in Ohio to win statutory damages" and as a "professional plaintiff" may not qualify as a "consumer" under the Ohio Consumer Sales Practices Act.  Since Plaintiff's motion does not seek to strike ¶¶ 21 or 42, the Court takes no position on the merits of this defense.

characterization as misleading, not only based on the actual dates of the answer (which was signed by counsel) and motion to withdraw, but also considering that Defendants were on notice of the amended complaint six months earlier when Plaintiff first moved to amend. Plaintiff additionally points out that Defendants' prior counsel were both well-seasoned litigators at one of Cincinnati's largest law firms. Plaintiff complains that "[t]he mere fact that the Defendants have a new attorney is not good cause for reopening the pleadings." (Doc. 55 at 3).

New counsel seeks the Court's indulgence to file the new counterclaim despite acknowledging that Defendants technically remained represented by competent counsel at the time they filed their prior answer. While the issue is relatively close, the undersigned *conditionally* recommends allowing the otherwise-tardy amendment. Although the original discovery deadline is about to close, it appears highly likely that the parties will seek to extend the current deadlines. By separate Order, the undersigned has directed the parties to submit a status report and/or an Agreed Order Extending existing deadlines.

The counterclaim is based on a document – the Settlement Agreement in Case No. 1:15-cv-108 – that is clearly central to this case. The parties' prior dispositive motions included multiple references to the same Settlement Agreement on which Defendants now base their breach of contract counterclaim. In short, there is no dispute that issues

relating to the Settlement Agreement in Case No. 1:15-cv-108 will remain central to this case regardless of whether the counterclaim is permitted.[8]

Nevertheless, the recommended grant of the motion to amend is conditional based upon the uncertainty as to whether Defendant Ullah attended his recently noticed deposition. If Defendant failed to appear as required, the close balance of equitable factors would tilt the other way and cause the undersigned to recommend that the Court exercise its discretion to deny the untimely proposed amendment/ counterclaim.

### III.    Conclusion and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT** Plaintiff's motion to strike certain affirmative defenses (Doc. 36) be **GRANTED IN PART**, and that paragraphs 20, 22, 26, 27, 32, 37, 46, and 51 be **STRICKEN** from Defendants' answer, but that the motion be **DENIED** as to the defenses contained in paragraphs 38 and 50. **IT IS FURTHER RECOMMENDED** that Defendants' motion for leave to file a counterclaim (Doc. 47) be **CONDITIONALLY GRANTED**, unless Defendant Ullah failed to appear for his deposition on August 17, 2018, in which case the motion should be **DENIED**.

        *s/Stephanie K. Bowman*
        Stephanie K. Bowman
        United States Magistrate Judge

---

[8] Defendants indicate that they will "likely" file a motion "under the frivolous litigation rules and/or a motion to enforce" the prior Settlement Agreement regardless of whether they are permitted to add the counterclaim. (Doc. 47 at 2).

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

VINCENT LUCAS,

    Plaintiff,

v.

TOTAL SECURITY VISION, INC., et al.,

    Defendants.

Case No. 1:16-cv-1102

Barrett, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).