## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

VINCENT LUCAS,                                                  Case No. 1:16-cv-1102

           Plaintiff,                                    Barrett, J.
                                                       Bowman, M.J.

     v.

TOTAL SECURITY VISION, INC., et al.,

           Defendants.

## REPORT AND RECOMMENDATION

On November 23, 2016, Plaintiff, an experienced *pro se* litigant, filed the above-captioned case. Pursuant to local practice, the case was referred to the undersigned.[1] Currently pending before the Court are: (1) Plaintiff's motion to determine the admissibility of certain evidence and other relief, (Doc. 74); (2) Plaintiff's motion for sanctions regarding discovery (Doc. 86); (3) Defendants' second motion to dismiss and motion to enforce a settlement agreement (Doc. 87); and (4) Plaintiff's motion to dismiss Defendant's counterclaim with prejudice.

---

[1]Plaintiff has filed at least ten lawsuits in this Court alone, most of which contain similar allegations of illegal telemarketing practices. Although Plaintiff filed this case *pro se*, he was briefly represented by attorney Alfred V. Lucas before returning to his *pro se* status in October 2017. In addition to the above-captioned case, *see* Case No. 1:11-cv-409 (closed), Case No. 1:12-cv-630 (closed), Case No. 1:15-cv-108 (closed), Case No. 1:16-cv-790, Case No. 1:16-cv-1127 (closed), Case No 1:17-cv-47 (closed); Case No. 1:17-cv-374 (closed), Miscellaneous Case No. 1:17-mc-02 (closed), Case No. 2:18-cv-582, and most recently, Case No. 1:18-cv-664 (removed from state court). Plaintiff has informed this Court of related litigation he has pursued in several state courts.

For the reasons that follow, the undersigned recommends granting Defendants' motion, and denying Plaintiff's motions. The undersigned includes an alternative recommendation that this case be dismissed *sua sponte* because it has now been conclusively established that Plaintiff seeks to relitigate claims previously pursued (successfully) by the same Plaintiff against a different set of defendants in this Court.

## I.    Background

As detailed in a Report and Recommendation ("R&R") filed on May 1, 2017, (Doc. 17), Plaintiff's complaint in the above-captioned case closely relates to a prior case, *Lucas v. Jolin*, Case No. 1:15-cv-108 (hereinafter *Jolin*).  Both cases involve allegations that various defendants are liable for violating federal telemarketing statutes by making the exact same 12 telephone calls to Plaintiff's residential phone line on the same dates in late 2014 and early 2015.  The two identified Defendants in the above-captioned case are Total Security Vision, Inc. ("TSV") and Mohammad A. Ullah ("Ullah"), who is named individually and in his capacity as an officer of TSV.

The May 2017 R&R recommended granting the Defendants' motion to dismiss this case as barred by res judicata or claim preclusion,[2] and denying Plaintiff's counter-motion for summary judgment because it did not appear that Plaintiff would have a legal claim to

---

[2] Some courts have held res judicata encompasses both "issue preclusion (collateral estoppel) and claim preclusion (res judicata in its narrow sense). *Heyliger v. State University and Community College System of Tenn.*, 126 F.3d 849, 851-852 (6th Cir. 1997).  However, other courts have separated the concepts, and defined res judicata more narrowly.  *See id.* (noting the "perennial confusion over the vocabulary and concepts" and quoting the Supreme Court's exposition of the concepts in *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984)).  The Sixth Circuit has repeatedly expressed a preference for the English phrases over the Latin, *see id.*  Because the instant case focuses on the concept of claim preclusion, the undersigned previously articulated her preference for the English phrase.  However, based on the Plaintiff's adherence to the Latin phrase and the use of the same by the presiding district judge, the undersigned reverts to the use of "res judicata."

recover for the same calls in a second lawsuit against new (but related) Defendants. (Doc. 17). The R&R reasoned that Defendants had demonstrated that Plaintiff had pleaded all four elements required to show claim preclusion, including privity with one of the prior Defendants in Case No. 1:15-cv-108, Premium Outsourced Solutions Inc. (hereinafter "POSI"). (*Id.* at 4-5).

On September 29, 2017, the presiding district judge partially sustained Plaintiff's Objections to the May 2017 R&R, holding that Plaintiff's claims survived the Defendants' motion to dismiss but without prejudice to renew Defendants' arguments, if appropriate, on summary judgment. (Doc. 20). In his Objections, Plaintiff had argued (in part) that his complaint had not actually alleged that Defendants TSV and Ullah were in privity with POSI, but had alleged only that Defendants "were acting as agents of" POSI in the prior case. In ruling on Plaintiff's Objections, Judge Barrett first pointed out that, counter to Plaintiff's argument, a Sixth Circuit case interpreting Ohio law holds that "a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship.*" ABS Indus., Inc. ex rel ABS Litig. Tr. v. Fifth Third Bank*, 333 Fed. Appx. 994, 999 (6th Cir. 2009) (citations omitted). (Doc. 20 at 3-4). Nevertheless, the Court sustained Plaintiff's Objection that the privity element of res judicata had not been established based on the limited standard of review applicable to a motion to dismiss.[3] The Court distinguished *ABS Indus., Inc.* on grounds that there, an agreement between the parties was attached as an exhibit to the complaint that "made it

---

[3]Aside from contesting the "privity" element required to show that the second action involves the same parties, Plaintiff's Objections did not challenge the R&R's determination that the allegations in his complaint satisfied the other three elements required to establish res judicata: (1) a default judgment against Jolin and POSI that was equivalent to a final judgment on the merits; (2) the same claims; and (3) the same transaction or occurrence. *See Micropower Group v. Ametek, Inc.*, 953 F. Supp.2d 801 (S.D. Ohio 2013).

indisputable that the two parties were in a principal-agent relationship."  (Doc. 20 at 4).

In contrast to that "indisputable" evidence, the Court found that the issue of privity could

not be determined "at this early stage" on the pleadings alone.  (Doc. 20 at 4).

> [T]he Court finds it is not presently able to determine whether a principal-agent relationship exists. The record reveals no evidence the parties had the sort of fiduciary relationship necessary to brand [Total] Security and Ullah agents of POSI. Unlike the Sixth Circuit in *ABS* wherein the Court found the "explicit allegations of agency in its complaint" along with the "specific language of the [a]greement" doomed any argument to the contrary, there is no such evidence in this case for the undersigned to properly consider at the motion to dismiss stage. *ABS*, 333 Fed.Appx. at 1001-02. Moreover, Plaintiff's perfunctory use of the "agent" is not dispositive, as the characterization of the parties' own relationship in the context of industry or popular usage is not controlling. *Id.* at § 1.02.
>
> Thus, while the Court must take the *factual* allegations of Plaintiff's Complaint as true when deciding a motion to dismiss, whether a principal-agent relationship exists is a question of law for the Court – a determination the Court is unable to make at this juncture. It may ultimately be true that res judicata applies. But Defendants have not provided, and the Court has not found, any authority that would oblige the Court to conclude based solely on Plaintiff's use of the word "agent" that res judicata bars Plaintiff's claims. Accordingly, Defendants have failed to establish res judicata applies. If appropriate, Defendants may once again raise the res judicata defense at the summary judgment stage.

(Doc. 20 at 4-5).[4]

On February 21, 2018, Plaintiff filed a first amended complaint. (Docs. 30, 33).

With some irony, given that Judge Barrett's Order suggested that privity could defeat

Plaintiff's claim, in his amended complaint Plaintiff even more clearly alleges that "Total

Security Vision is <u>in privity</u> with [POSI] for the purposes of the doctrine that 'a final

---

[4] Judge Barrett's Order partially sustaining Plaintiff's objections did not address an alternative discussion in the R&R that explained that even "if Plaintiff's own allegations of privity among Ullah and TSV in this case and POSI in Case No. 1:15-cv-108 were not sufficient to apply the doctrine [of res judicata], the undersigned would still recommend dismissal of the instant lawsuit based upon the closely related doctrine of *nonmutual* claim preclusion. (Doc. 17 at 8).

judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and persons in privity with them' in the same manner as if the persons in privity were named as parties in the judgment."  (Doc. 33 at ¶51, emphasis added).

Plaintiff's amended complaint also set forth a new claim for declaratory judgment based upon the prior case, seeking a declaration that TSV and Ullah are in privity with POSI and therefore are "jointly and severally liable for the judgment of this Court against [POSI] in *Lucas v. Jolin*, Case NO. 1:15-cv-108 in the same manner as if they had been named in the judgment along with [POSI]."  (Doc. 33 at 13 ¶2).   Although the prior R&R had recommended denial of any amendment in light of the recommended dismissal of the original complaint, the Order partially sustaining Plaintiff's objections to that R&R left open the door to add the referenced new declaratory judgment claim.

> Plaintiff next objects to the Magistrate Judge's recommendation that Plaintiff's leave to amend his Complaint should be denied.  First, he contends that if the Court finds his Complaint is insufficient to obtain the declaratory judgment requested in his motion for summary judgment, he should be granted leave to amend.  Because the Court does not address Plaintiff's objections related to his motion for summary judgment, the Court likewise does not address whether the Complaint is sufficient to obtain a declaratory judgment in that regard.  While the Court is skeptical that Plaintiff would ultimately succeed in obtaining a declaratory judgment, the Court will not foreclose the possibility of permitting him to amend his Complaint in the future, if appropriate.

(Doc. 20 at 5).

Defendants' answer to the amended complaint prompted Plaintiff to file a motion to strike certain defenses in that answer.  Soon thereafter, TSV and Ullah's original defense counsel moved to withdraw from further representation, which motion was granted on May 25, 2018.

5

On June 27, 2018, new counsel entered an appearance for TSV and Ullah and moved for leave to amend the answer to include a counterclaim.  The counterclaim alleges that the instant lawsuit amounts to a breach of a prior Settlement Agreement executed between Plaintiff and Defendants Net VOIP Communications, Inc. and Ullah in *Lucas v. Jolin*, Case No. 1:15-cv-108.  Defendants maintain that they "are within the released parties as defined" in that Settlement Agreement.  (Doc. 54 at ¶6).  The undersigned filed a second R&R on September 21, 2018, granting in part Plaintiff's motion to strike certain defenses but also granting Defendants' motion to permit amendment of the answer to include the counterclaim.  (Doc. 57).  The presiding district judge adopted that R&R on January 14, 2019.  (Doc. 84).

Following amendment of earlier calendar orders, both discovery and dispositive motion deadlines were extended to February 13, 2019. (*See* Doc. 80 at 13, ¶ 13). Defendants filed a "second motion to dismiss" on January 31, 2019.  Plaintiff filed a motion to dismiss the counterclaim on March 6, 2019.

II.    **Pending Motions**

    A. **Defendants' Motion to Enforce Settlement Agreement and (Second) Motion to Dismiss (Doc. 87)**

More than five months before filing the instant motion, Defendants represented to this Court that they anticipated filing a motion to enforce the *Jolin* Settlement Agreement regardless of whether they were permitted to add their counterclaim for attorney's fees relating to the enforcement of that Agreement.  (Doc. 47 at 2).  When the Court permitted Defendants to amend their answer to include an otherwise untimely counterclaim based on the alleged violation of the Settlement Agreement, the undersigned pointed out that

6

"there is no dispute that issues relating to the Settlement Agreement in Case No. 1:15-cv-108 will remain central to this case regardless of whether the counterclaim is permitted." (Doc. 57). On January 31, 2019, Defendants filed their long-anticipated motion to enforce the *Jolin* Agreement.

### 1. The Settlement Agreement is Enforceable by Released Parties

Neither TSV nor Ullah were parties to the *Jolin* case, but Ullah was the sole owner, director, officer, and agent of the only settling Defendant, Net VOIP Communications, Inc. ("Net VOIP"). The other six identified defendants in the *Jolin* case were as follows: (1) Aurelio Jolin, a Philippine telemarketer also known as Victor Jolin; (2) Visram, Inc., (3) Kevin Jay Calvin; (4) Starion Energy Inc.[5]; (5) POSI; and (6) Shawn Wolmuth individually and in his capacity as officer and/or owner on behalf of POSI. Plaintiff had alleged that multiple relationships existed between the parties, including that Jolin was an officer of Net VOIP, and that Jolin made the offending telemarketing calls on behalf of POSI. (Case No. 1:15-cv-108, Doc. 32, amended complaint at ¶¶8-9, 11-12). Eventually, Plaintiff obtained default judgments against Defendants Calvin, Jolin, POSI, Visram, and Wolmuth.[6] (Doc. 85).

On or about May 31, 2016, as the only defendant in the *Jolin* case who had ever appeared, Net VOIP negotiated a Settlement Agreement with Lucas that explicitly released all individuals and entities with specified relationships to Net VOIP, while excluding the other defendants. Pursuant to the Agreement, Net VOIP paid Plaintiff the

---

[5] Plaintiff voluntarily dismissed Starion Energy on 9/17/15.
[6] Plaintiff has been unsuccessful in collecting on those judgments. (See Plaintiff's Deposition, Doc. 89 at 54).

sum of $2,000.00 in exchange for a full release of all claims for the "Released Parties,"

defined in the first lengthy sentence of paragraph 3 of the Agreement as follows:

> Effective upon receipt of Settlement Funds, Lucas shall release and discharge Net VOIP and successors, assignors, assignees, predecessors, parents, direct and indirect subsidiaries, affiliates, shareholders, anyone employed by Net VOIP at any time from Nov. 24, 2014 to the date of this Settlement Agreement, officers, vendors, contractors, directors, attorneys and agents, heirs and assigns (collectively, the "Net VOIP Released Parties") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, extents, executions, judgments, claims, damages, costs, liens, liabilities, and demands, whatsoever, in law, admiralty, equity, known or unknown, which against Net VOIP Released Parties, Lucas ever had, now has, or hereafter can, shall or may have, continuing or relating to the twenty-three phone calls that are the subject of the Litigation (collectively "Claims") whether asserted or unasserted, known or unknown, foreseen or unforeseeable, discoverable or undiscoverable, whether arising in law or inequity from the beginning of time to the date of this settlement agreement, except for the agreements and promises contained in this agreement.

(Doc. 87-1 at 1, ¶3).   The Settlement Agreement provides for damages in the form of

attorney fees and costs to the prevailing party should legal enforcement of the terms and

conditions of the Agreement be required.  (*Id*. at 3, ¶10).

   "Because settlement agreements  are  a  type  of  contract,  the  formation

and enforceability of a purported settlement agreement are governed by state contract

law." *Smith v. ABN Amro Mortg. Grp. Inc.*, 434 Fed. Appx. 454, 460 (6th Cir. 2011)

(citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992)).

Controlling  Ohio  law  recognizes settlement agreements  as enforceable contracts  to

resolve a legal dispute. *Continental W. Condominium Unit Owners Ass'n v. Howard E.

Ferguson, Inc.*, 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996).   A district court's

determination of whether or not to enforce a Settlement Agreement is reviewed under an

abuse of discretion standard of review. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000).

As Net VOIP's owner and sole officer, Ullah signed the Settlement Agreement on its behalf. Plaintiff points out that Ullah signed only as an officer of Net VOIP, not in his personal capacity, since he was not a named Defendant in *Jolin*. However, at first glance Ullah would appear to fall squarely within the above definition of "Released Parties" because he was the sole owner and officer of Net VOIP, and was necessarily a "shareholder" as well as an "officer," "employee" and "agent" of that Defendant – all of which relationships brought him within the scope of "Net VOIP Released Parties."

Not so fast, protests Lucas. Plaintiff points to the second and third sentences of the same paragraph of the Settlement Agreement, which Plaintiff represents that he drafted and added in order to ensure that any person or entity that had "virtually any business relationship with POSI" or the other defendants in the *Jolin* case would not be released from liability "no matter how closely related to Net VOIP" as the settling party. (Doc. 91 at 4, emphasis original). Thus, after defining the "Net VOIP Released Parties" in the first sentence, ¶3 of the Settlement Agreement goes on to state:

> Notwithstanding the foregoing, this Settlement Agreement does not confer any rights or benefits on any other defendant in The Litigation (or any of their successors, assignors, assignees, predecessors, parents, direct and indirect subsidiaries, affiliates, owners, shareholders, employees, officers, vendors, contractors, directors, attorneys and agents, heirs and assigns) and does not remise, release, or discharge any legal claims that Lucas may have against any other defendant in The Lawsuit (or any of their successors, assignors, assignees, predecessors, parents, direct and indirect subsidiaries, affiliates, owners, shareholders, employees, officers, vendors, contractors, directors, attorneys and agents, heirs and assignees), including but not limited to Aurelio Jolin. Except as provided in this paragraph, this Settlement Agreement does not confer any rights or benefits

9

whatsoever on any third party and does not remise, release, or discharge
any legal claims that Lucas may have against any third party.

(Doc. 87-1 at 1-2, ¶3).   Plaintiff argues that reading ¶3 as a whole, Ullah and TSV should
be deemed to be excluded from the definition of "Net VOIP Released Parties" so long as
they had a business relationship with any other defendant in *Jolin*, including POSI.
Plaintiff freely admits that if it were not for Ullah's alleged business relationship with POSI,
he would indeed be released by the first sentence of ¶3.   However, Plaintiff maintains that
the release that was granted in the first sentence of ¶ 3 is expressly taken away in the
second sentence of that paragraph through the clause, "Notwithstanding the foregoing…."

Defendants disagree with Plaintiff's construction of the second part of ¶3, arguing
that Plaintiff's interpretation would render meaningless the first sentence.   Defendants
argue that the only reasonable construction of the whole of ¶3 is that the phrase
"[n]otwithstanding the foregoing, this Settlement Agreement does not confer any rights or
benefits whatsoever on any *other* defendant…" means that the exclusionary language
means "other" than the "Net VOIP Released Parties."   (Doc. 87 at 6, emphasis added).
By contrast, Plaintiff testified that he read the exclusionary language of "other" as limited
to the exclusion of Defendant Net VOIP **alone**, and not all "Net VOIP Released Parties."
(Plaintiff's Deposition, Doc. 89 at 39-40, emphasis added).

Reading the contractual language as a whole, the undersigned agrees with
Defendants that the Settlement Agreement in the *Jolin* case clearly and unambiguously
releases Mohammad Ullah from all liability as among the "Net VOIP Released Parties."
Plaintiff's contrary interpretation is unreasonable, and creates an internal inconsistency
that is not supported by the record presented.   If Plaintiff had intended the phrase

"Notwithstanding the foregoing, this Settlement Agreement does not confer any rights or benefits on any other defendant in The Litigation," to take away the exclusion clearly granted in the preceding sentence, he could have drafted that meaning more clearly.  For example, he could have stated:  "Notwithstanding the definition of "Net VOIP Released Parties," no individual or entity should be included within that definition or released if they had a business relationship with any defendant in *Jolin* other than Net VOIP, <u>regardless of whether they **also** had a business relationship with Net VOIP</u>."  However, as actually written, the interpretation of ¶ 3 is (at best) ambiguous.  Because Plaintiff attests to being the drafter of the "exclusionary" provision of ¶ 3, any ambiguities are construed against him.

The issue of whether Ullah alone or whether both he and TSV are included in the "Net VOIP Released Parties" language presents only a slightly closer issue.  Defendants argue that TSV falls within the scope of the "Net VOIP Released Parties" not because of the type of undisputed <u>direct</u> relationship with Net VOIP that Ullah possesses, but instead because of TSP's indirect relationship as an "affiliate" of Net VOIP.  TSV and Net VOIP share the same physical address as well as the same sole owner/officer (Ullah), and Defendant Ullah answered affirmatively in his deposition when Plaintiff asked whether Net VOIP was set up as a "spin off" of TSV. (Doc. 88 at 33-34).  Based upon that shared ownership and other indicia of a close relationship between the Net VOIP and TSV, Defendants maintain that TSV must be considered "a direct affiliate" of Net VOIP.  Essentially, Defendants argue that because TSV and Net VOIP are sister companies, they are within the legal definition of "affiliates."

11

When the language of a written contract is clear and can be given a definite legal meaning, a court need look no further than the writing itself to find the intent of the parties. *Westfield v. Galatis,* 100 Ohio St.3d 216, 219, 797 N.E.2d 1256 (2003). The word "affiliate" is known in law to mean "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." Black's Law Dictionary (10th ed. 2014); *accord Pope v. Carl*, 742 Fed. Appx. 123, 127 (6th Cir. 2018) (interpreting "affiliate" in settlement agreement under Kentucky law). Because TSV falls within the legal definition of an affiliate to Net VOIP, TSV falls within the definition of a "Net VOIP Released Party."

Plaintiff urges this Court to reject the Defendants' position that TSV is an affiliate of Net VOIP, citing Ullah's insistence that he observed the corporate formalities required to keep the two entities (TSV and Net VOIP) separate. In addition, TSV has failed to list Net VOIP Communications as an affiliate on any of its yearly telemarketing applications filed since 2014. (Doc. 91 at 12, citing exhibits at Doc. 91-5 through 91-9). However, Plaintiff does not dispute that TSV and Net VOIP are both wholly owned by Ullah, which falls within the legal definition of an "affiliate." The fact that Ullah has insisted that they are separate entities and maintained corporate formalities does not change the conclusion that they are affiliates as a matter of law.

Alternatively, Plaintiff reiterates his argument that any release provided in the first sentence of ¶3 to an "affiliate" of Net VOIP is explicitly voided by the second sentence. Plaintiff previously obtained default judgments against both Visram and POSI in *Joln and "other"* defendants were expressly excluded from the definition "NET VOIP Released Parties." (Doc. 87-1). Ullah and TSV have admitted to selling POSI a PABX system, such

12

that TSV is a vendor and contractor to POSI. (Doc. 91-3 at 9, TSV Interrogatory Response 1).  Assuming that this Court grants Plaintiff's motion to draw adverse inferences, Plaintiff contends that TSV and Ullah also could be considered to be "agents" of POSI.  In addition, and contrary to Ullah's assertion of lack of business relationship between TSV and POSI or Visram, in a 2015 telemarketing license application, Ullah listed Visram, Net VOIP and POSI as among the "fictitious names" for TSV.  (Doc. 91-6 at 1).  Moreover, in its Florida Commercial Telephone Seller Business License Applications, TSV attached copies of "sales scripts given to those soliciting for [TSV]" which appear to contradict Ullah's deposition testimony in this case that TSV has never "made any telemarketing calls related to offers to lower credit card interest rates or related to credit card debt relief." (*Compare* Doc. 88 at 25-26; *id.* at 28-30 with Doc. 91-6 at 4, 91-7 at 5, 91-8 at 4-5; *see also* 91-11 "Sales Script").   Although Plaintiff's arguments and exhibits confirm the existence of some type of relationship between TSV and POSI, that relationship is irrelevant based on the undersigned's construction of ¶ 3 as a whole.  Plaintiff agreed to release "affiliates" of Net VOIP, and TSV is a legal affiliate.

## 2. Plaintiff's Alternative Arguments to Set Aside the Settlement Agreement

As an alternative to his construction of the second sentence of ¶3, Plaintiff argues that this Court should disregard the entire Settlement Agreement as "voidable."  First, Plaintiff argues that the Defendants breached the confidentiality provision of the Agreement by disclosing it to this Court in the context of a Rule 12(b)(6) motion to dismiss on the basis of the legal doctrine of res judicata.  However, this Court previously rejected the same argument presented by Plaintiff, and again disagrees that the timing of

13

Defendants' disclosure of the Settlement Agreement in this litigation constituted a material breach. (*See* Doc. 17, rejecting Plaintiff's attempt to amend his complaint to add a new claim for breach of contract based upon Defendants' allegedly improper disclosure of the existence of the Settlement Agreement, finding no impropriety; s*ee also* Doc. 20, overruling Plaintiff's cursory objection that Plaintiff not be granted leave to amend to add a breach of contract claim based on allegedly wrongful disclosure).

Plaintiff also argues that the Agreement is "voidable on the grounds of fraud and fraudulent misrepresentation." (Doc. 91 at 14). Essentially, Plaintiff is claiming fraud in the inducement in the Settlement Agreement. Plaintiff argues that he settled with Net VOIP based upon Ullah's representation that "Net VOIP has never engaged in telephone solicitation either directly or through a sales agent." Plaintiff states that at the time "I believed that if Ullah lied in that affidavit, and I could prove it, I could have the Settlement Agreement voided on the grounds of Ullah's fraud." (Doc. 91 at 14). Plaintiff does not now argue that the statement was false, but instead argues that the statement was "misleading" by omission, because Ullah failed to inform Plaintiff of the close relationship that existed between Net VOIP and TSV. To the extent that this Court now would conclude that TSV is so closely "affiliated" with Net VOIP that TSV should be considered as a Released Party, Plaintiff argues that Ullah's prior declaration was "intentionally deceptive, designed to mislead me to believe that his business is not involved in telemarketing, when in truth, Ullah's business is involved in telemarketing through a business entity that is … allegedly 'in privity' with Net VOIP." (Doc. 91 at 15). Plaintiff argues that "[i]f Ullah had disclosed the material fact that [another] one of his companies does do the very things that he stated under oath that his company [Net VOIP] does not

do, I would not have entered into the Settlement Agreement" with Net VOIP. (Doc. 91 at 15-16).

The undersigned notes that it does not appear that Plaintiff was actually misled, even assuming that the alleged connection with TSV was material, and/or that Ullah had some form of duty to legal disclose all affiliates.[7] In any event, the undersigned finds no basis for voiding the Settlement Agreement based upon Plaintiff's contention that Ullah had some sort of legal duty at the time of the Settlement to volunteer information about a non-party to the prior suit.

Last, Plaintiff argues that it would be "unconscionable" to dismiss this case based upon the *Jolin* Settlement Agreement because Plaintiff believed that the "exclusionary clause" was written "to ensure that anybody with virtually any business relationship with POSI or Visram would not be released," and "Defendants are attempting to enforce something that I didn't agree to." (Doc. 91 at 16). The undersigned again disagrees. Plaintiff is an extremely sophisticated *pro se* litigant. The fact that Plaintiff now realizes that the Settlement Agreement may be interpreted in a way that he did not intend, or is unhappy with the bargain that he struck, does not warrant setting aside the contract based on unconscionability.

### 3. Revisiting Nonmutual Claim Preclusion

There is no dispute that the underlying allegations in this case are strikingly similar to those presented in the *Jolin* case. (*See generally*, Doc. 17 at 4, describing "striking

---

[7] In his deposition testimony, Plaintiff admitted that he had researched Ullah in the *Jolin* case and was well aware that the telephone number from which some of the 12 calls originated was registered to TSV, which was owned by Ullah. (Doc. 89 at 70-71). Plaintiff further testified to his belief that at the time Ullah executed the Settlement Agreement, Ullah was lying, and was attempting to conceal TSV and the telephone number, which angered Plaintiff. (*Id.* at 71-73).

similarities" between the second amended complaint in the *Jolin* case and the allegations made in this case).  The undersigned remains concerned by Plaintiff's demonstrated propensity to file multiple federal lawsuits over the exact *same* offending telephone calls, essentially changing only the names of the Defendants in the hopes of finding an individual or entity from which he can recover damages.  As set forth in the first R&R filed in this case:

> This is not the first time that Plaintiff has sought to hold a newly identified defendant liable for a default judgment previously obtained against a different defendant.  In fact, in the very same prior case now at issue, the undersigned refused Plaintiff's efforts to hold Aurelio "Victor" Jolin liable for a prior default judgment that Plaintiff had obtained against a Philippine corporation ("Qall Cord") in Case No. 1:12-cv-630.  The undersigned wrote: "Jolin was not a party to Case No. 1:12-cv-630, but Plaintiff alleges that he nevertheless should be held personally liable for Qall Cord's debt."  (Case No. 1:15-cv-108, Doc. 85 at 3).  In the Report and Recommendation filed on July 15, 2016 and adopted as the opinion of the Court on September 19, 2016, the undersigned explained that Jolin could not be held liable for the default judgment obtained against Quall Cord in the prior case.

(Doc. 17 at 6-7).

In advocating for the entry of a default judgment against the then-newly identified Jolin in Case No. 1:15-cv-108, Plaintiff argued that this Court could either "[imagine that the [prior] judgment against Qall Cord does not exist," so that this Court should simply consider the claims as entirely new, or else that the *Jolin* case could be viewed as a post-judgment action to "pierce the corporate veil" so that Plaintiff could collect the Qall Cord judgment from Jolin.

> The undersigned rejects both of Plaintiff's novel theories. Plaintiff cannot ask the undersigned to at once ignore the existence of the previous judgment, but to also use information alleged in the previous judgment to find Jolin liable. The fact remains that Plaintiff failed to assert his prior claims against Jolin regarding the telephone calls at issue in his claims against Qall Cord, and Jolin had no opportunity to litigate the matter. Plaintiff has not

alleged enough facts to show that Jolin was an officer of Qall Cord at the time these calls were placed, or that any other relationship existed that would subject the non-party Jolin to liability as a matter of law for the default judgment entered against Qall Cord in the 2012 case. The undersigned is unaware of any authority to review old claims in a closed case in order to assign new and additional liability to a nonparty who was not in privity with any of the parties to the prior litigation. Therefore, the Plaintiff's arguments are rejected and the undersigned finds no legal basis to hold Jolin liable for the previous default judgment against Qall Cord.

*Jolin*, Doc. 85 at 6. Ultimately, the undersigned recommended that default judgment be entered against Jolin and other defendants only for the twelve "new" telephone calls placed to Plaintiff's residential home telephone number, which calls had not been the subject of the prior 2012 case. Judge Black adopted that R&R in full, agreeing that Plaintiff could not file a second suit against "new and improved" target defendants for the same calls.

In the instant lawsuit, Plaintiff again seeks to recover for the same twelve calls from two new defendants who were not among the seven previously identified in the *Jolin* case. The undersigned is well aware that Judge Barrett rejected the May 2017 recommendation to grant the Defendants' first motion to dismiss based upon the doctrine of defensive res judicata. Notably, however, Judge Barrett was careful to explain that the he was declining that recommendation only in the context of a motion to dismiss after determining that the Court did not have a sufficient record before it "at this juncture" to demonstrate an agency relationship that would make defensive res judicata appropriate. At the same time, Judge Barrett recognized that "[i]t may ultimately be true that res judicata applies" and that "[i]f appropriate, Defendants may once again raise the res judicata defense at the summary judgment stage" (Doc. 20 at 4-5).

17

Now two years later, discovery has been completed. Although new defense counsel has not elected to re-assert the res judicata defense, the undersigned recommends that the Court reconsider the issue *sua sponte* to avoid the unnecessary waste of judicial resources. *See generally Arizona v. California*, 530 U.S. 392, 412 (2000); *Hutcherson v. Lauderdale County, Tenn.*, 326 F.3d 747, 756 (6th Cir. 2003).

For similar reasons, the undersigned renews the prior alternative recommendation that this case be dismissed based upon the closely related doctrine of *nonmutual* claim preclusion, which recommendation was neither formally adopted nor rejected by Judge Barrett in his Order ruling on the May 2017 R&R. The doctrine of nonmutual claim preclusion was not raised by the Defendants, but was raised *sua sponte* by this Court. The instant record presents an identical individual Plaintiff who seeks a new TCPA recovery against new Defendants for the same calls for which he previously obtained default judgments against five other defendants, dismissed one defendant, and settled with a seventh. Plaintiff conceded in his deposition testimony in this case that the reason he filed suit against the current two Defendants was because he had been unable to collect on the prior default judgments he obtained in the *Jolin* case. (Doc. 89 at 73, responding to query if he would have filed suit had he been able to collect the prior judgment, "No. Of course not because I can't collect against more than one party.").

The undersigned remains convinced that a "common sense" approach to the doctrine of nonmutual claim preclusion supports dismissal based upon the fact that the instant lawsuit arises out of the same operative facts with only slight changes to the legal theory asserted or the parties sued. *See generally Randles v. Gregart,* 965 F.2d 90, 93 (6th Cir.1992) (*per curiam*) (upholding dismissal of successive complaint against new

18

defendants, collecting cases and citing generally *United States v. Mendoza,* 464 U.S. 154, 158-59 (1984); *Parkland Hosiery Co. v. Shore,* 439 U.S. 322, 331(1979)); *see also Heritage Hills Fellowship v. Plouff,* 555 F. Supp. 1290, 1295-96 (E.D. Mich. 1983).    In *Gregart*, the Sixth Circuit also cited with approval *Hazzard v. Weinberger,* 382 F. Supp. 225, 226-229 (S.D.N.Y. 1974), *aff'd,* 519 F.2d 1397 (2d Cir.1975), in which the court held that nonmutual claim preclusion is appropriate when a pro se litigant brings repeated actions upon the same operative facts with slight change in legal theories and "cast of characters-defendants."

### B. Plaintiff's Motion to Determine the Admissibility of Certain Evidence and for Other Relief  (Doc. 74)

On December 12, 2018, Plaintiff filed a motion seeking several evidentiary and discovery rulings.  Defendants failed to file any response.

Plaintiff first moves for a pretrial ruling on the admissibility of certain exhibits that Plaintiff intends to use at trial to prove his claims.  Plaintiff argues that the referenced exhibits are admissible under the Federal Rules of Evidence 902(11) and 803(6) as evidence that is self-authenticating and that falls within an exception to hearsay.  Because rulings on the admissibility of evidence are best made at the time of trial, the undersigned alternatively would deny this portion of the motion as premature, without prejudice to renew before the trial judge at trial, should the Court reject the undersigned's analysis favoring dismissal and elect to proceed to trial.

Plaintiff next seeks an order declaring that Total Security Vision has admitted certain Requests for Admission (*see* Doc. 74-3, Nos. 6-8), based upon their untimely response.  Plaintiff served the requests on September 24, 2018, but Defendants did not

19

respond until November 1, 2018, beyond the thirty days permitted by Rule 36(a)(3). Plaintiff also complains that the response does not contain a certificate of service and is unsigned, a fact he brought to defense counsel's attention on November 9.

Defendants previously were warned (twice), that "discovery must be answered timely unless an extension is requested and agreed to." (Minute Entry 10/9/18; see also Doc. 80 at 3 and 5, finding Plaintiff's motion to compel and for sanctions to be "well-taken"). On December 19, 2018, the undersigned imposed a monetary sanction of $500.00 on Defendants based upon their delay in production, and expressly warned them that if they continued to fail to produce the referenced discovery, "additional monetary sanctions may be imposed, and additional non-monetary sanctions will be seriously considered." (Doc. 80). Continued tardy production, and Defendants' further failure to respond to Plaintiff's notification of the lack of signature on their responses, is inexplicable and inexcusable. For that reason, despite the mootness of the issue should the presiding judge adopt the recommendation that this matter be dismissed, the undersigned recommends granting Plaintiff's motion to deem the referenced three Requests admitted in full.

Last, Plaintiff's motion also seeks an order directing Defendants "to produce all evidence requested by Request for Production #22 by a date certain" or alternatively to dismiss their counterclaim with prejudice as a discovery sanction. The undersigned also recommends dismissing the counterclaim for the reasons discussed below.

## C.  Plaintiff's Motion for Discovery Sanctions (Doc. 86)

On January 30, 2019, Plaintiff filed another discovery-related motion, this time seeking additional non-monetary sanctions under Rule 37(b) on grounds that Defendants

have failed to comply with this Court's prior Order compelling discovery. Defendants again filed no response to Plaintiff's motion.

The undersigned explicitly warned Defendants that if they "fail to produce the twice-ordered discovery, or fail to timely complete payment to Plaintiff of the $500.00 sanctions,[8] additional monetary sanctions may be imposed, and additional non-monetary sanctions will be seriously considered." (Doc. 80 at 13, ¶4). The referenced discovery requests sought copies of all invoices, contracts, and agreements of Defendant Total Security Vision that pertained to POSI. Defendant Ullah testified in his deposition that no contracts or other agreements existed, but admitted to one invoice relating to PABX equipment sold by TSV to POSI. (Doc. 88 at 10-14). Plaintiff also requested the "name, address, email address, phone number, the dates the person worked at TSV, and job title" for all persons who worked at TSV or Meridian Financial Services since 2014.[9] Defendants produced a list of names, with no additional information other than a promise to contact TSV's accounting firm to produce additional information including 1099s or W2s. Finally, Plaintiff had requested the identification of all financial accounts including "the type of account (e.g. checking, credit card), and the account number," as well as corresponding bank statements (Doc. 64-1 at 1 ¶3; *id.* at 2).

According to Plaintiff's unopposed motion and the exhibits thereto, Defendants produced minimal responses, and – despite promises to produce more responses *after* this Court's deadline – have never done so. As a result of Defendants' failure to comply

---

[8] Based upon Plaintiff's silence on this issue, the undersigned assumes that Defendants timely complied with the directive to pay Plaintiff $500.00 as a monetary sanction.
[9] Ullah testified that TSV did not have traditional "employees" other than himself, but instead employed numerous independent contractors as needed.

with this Court's order, Plaintiff now seeks the imposition of three specific adverse inference instructions. The undersigned recommends *partially* granting Plaintiff's motion as to all three instructions if the Court does not adopt the recommendation to dismiss this case in its entirety.[10] However, the language suggested by Plaintiff is overbroad. Instead, the undersigned recommends that a version of the following "adverse inference" instructions be given if this case proceeds to trial. The following language is based upon the undersigned's view of the record as a whole, including the discovery requested (and not produced), Plaintiff's exhibits and Ullah's deposition testimony:

1. Current or former individuals who worked as independent contractors for Total Security Vision made telemarketing calls on behalf of POSI during the timeframe when Plaintiff alleges that he received the telemarketing calls that are the subject of this case;

2. The jury should assume that financial account statements reflect numerous payments between Defendants TSV and Premium Outsourced Solutions, Visram Inc., and Aurelio Jolin;

3. The jury may assume that written invoices, contracts, and other agreements may have shown that Total Security Vision had a contract with Premium Outsourced Solutions under which TSV would make telemarketing calls on behalf of POSI and such contract was in effect during the timeframe when the Plaintiff alleges that he received the calls that are the subject of this case.

To the extent that this non-monetary sanction may be considered dispositive, the undersigned includes it in this Report and Recommendation rather than disposing of the motion by Order.

### D. Motion to Dismiss Counterclaim with Prejudice (Doc. 92)

This Court previously allowed Defendants to amend their answer to include a counterclaim for breach of the Settlement Agreement in *Jolin* despite noting "the close

---

[10] If the Court adopts the recommendation for dismissal, the motion should be denied as moot.

balance of equitable factors" that barely favored allowing the otherwise untimely amendment. On March 6, 2019, Plaintiff filed his third pending discovery-related motion, this time seeking dismissal of the counterclaim with prejudice based upon Defendants' failure to comply with the December 19, 2019 Order. Defendants again failed to file any response to Plaintiff's motion.

Defendants' counterclaim seeks an award of attorney's fees incurred by Ullah and TSV in defending this lawsuit. Defendants have produced invoices from their prior attorneys (Dinsmore & Shohl), but have not produced any invoices from their current counsel.[11] Plaintiff complains that "it is impossible to tell how much of Mr. Kilguss's charges are due to the Defendants' own misconduct, such as the Defendants' refusal to provide discovery, or the time that Mr. Kilguss used to acquaint himself with the case, which would not have been incurred if Dinsmore did not quit due to the Defendants' failure to pay its former attorneys and respond to their communications." (Doc 92 at 2; *see also, generally* Doc. 43). Plaintiff argues that a failure to produce the requested discovery concerning Defendants' alleged damages supports dismissal of the counterclaim.

Plaintiff acknowledges that dismissal of a claim – the most extreme form of sanction under Rule 37 - is rare in federal court but argues that Defendants' conduct in this case warrants the severity of that sanction. The Sixth Circuit has explained that trial courts should review the following factors prior to imposing discovery sanctions, including the most severe sanction of dismissal:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) "whether the adversary was prejudiced

---

[11] It does not appear that Defendants objected to the production on the basis of attorney-client or other asserted privilege.

> by the dismissed party's failure to cooperate in discovery"; (3) "whether the dismissed party was warned that failure to cooperate could lead to dismissal"; and (4) "whether less drastic sanctions were imposed or considered before dismissal was ordered."

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir.1997) (quoting *Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 153-155 (6th Cir. 1988).

In *Harmon*, the Sixth Circuit noted that the sanction of dismissal should not be imposed "unless the derelict party has engaged in 'bad faith or contumacious conduct,'" as demonstrated by a "clear record," and only after considering less severe sanctions and providing notice that dismissal is contemplated. *See id.* at 367-368 (additional internal citations omitted). Considering all factors, the undersigned recommends granting Plaintiff's motion to strike the counterclaim.

### III. Conclusion and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT** Defendant's Second Motion to Dismiss Plaintiff's claims (Doc. 87) and Plaintiff's Motion to Dismiss the Counterclaim (Doc. 92) both be GRANTED, and that this case be dismissed with prejudice. If that recommendation is fully adopted, IT IS FURTHER RECOMMENDED THAT Plaintiff's remaining two motions (Docs. 74, 86) be denied as moot. However, if this case is to proceed to trial before Judge Barrett, the undersigned ALTERNATIVELY RECOMMENDS that Plaintiff's motion to determine the admissibility of certain evidence (Doc. 74) be DENIED IN PART and GRANTED IN PART, and that Plaintiff's motion for discovery sanctions in the form of adverse inferences (Doc. 86) also be DENIED IN PART and GRANTED IN PART, using the suggested language in place of the adverse inference language suggested by Plaintiff.

24

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

VINCENT LUCAS,                                        Case No. 1:16-cv-1102

          Plaintiff,                              Barrett, J.
                                                      Bowman, M.J.

    v.

TOTAL SECURITY VISION, INC., et al.,

          Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

26